118 304
123 635
118 304
124 247
118 304
127 95
118 304
32a 403
118 304
33a 232
118 304
36a 612
118 304
38a 154
118 304
139 310
118 304
148 62
118 304
150 310
151 23
44a 20
45a 668
118 304
49a 314
118 304
162 400
118 304
164 170
118 304
166 536
167 43
68a 76
118 304
72a 595
118 304
179 101
118 304
182 214
118 304
192 $^5$326
98a$^{11}$276
118 304
193 $^7$189
193 $^9$190
118 304
194 $^{10}$456
195 $^7$312
195 $^9$314
197 $^7$246
197 $^{16}$530
118 304
200 $^3$517
200 $^6$520
200 $^7$522
201 284

JOHN LEE et al.

v.

THE TOWN OF MOUND STATION.

*Filed at Springfield October 6, 1886.*

1. TOWN PLAT—*by whom to be certified—under the act in force in 1862.* The statute in force in 1862 does not make it indispensable that a plat of a town or an addition thereto shall be certified by the county surveyor or a deputy county surveyor. It may be certified by either, or by any "competent surveyor."

2. SAME—*subsequent alteration of record of plat—effect upon the original, as recorded.* The owner of a tract of land in 1862 laid out the same into town or village blocks and lots, with streets and a public square, and had the plat thereof recorded in the proper office. Afterward, thinking the plat was invalid because the surveyor making and certifying the same was not a county surveyor, he had the county surveyor to copy the same and certify it, and also had him erase from the record the name of the original surveyor and insert his own: *Held,* that such alteration of the record did not render it inadmissible in evidence. The record, when once made, is beyond the control of the parties making the same, and must be treated the same as if never changed.

3. DEDICATION—*by town plat.* A plat of a town, properly certified, acknowledged and recorded, as required by the statute, operates as a conveyance, in fee simple, of such parts of the premises platted as are marked or noted on such plat as donated or given to the public, and as a general warranty against the donor, his heirs and representatives, to the corporation, for the uses and purposes therein named, and for no other use or purpose.

4. SAME—*acceptance—revocation before acceptance—the mode thereof.* Until acceptance by the public of a public square, dedicated by a plat of a town or village, or an addition thereto, the party making and acknowledging such plat may, by deed, revoke the dedication, and thus reinvest himself with the title to the land. But this can not be done by an attempt to make and record a new plat after the record of the first.

5. SAME—*evidence admissible to show acceptance.* In an action by a town for breaking and entering a public square and removing fences, etc., in which its dedication and acceptance are disputed, evidence that the ground, for one year, was not assessed as private property for taxation, is admissible, as tending, though slightly, to show a public acceptance of the dedication, and an acquiescence on the part of the former owner, who is claimed to have made the dedication.

6. SAME—*sufficiency of evidence to show acceptance.* Where the inhabitants of a town or village, after the laying out of ground into blocks, lots and streets, and a public square, become duly incorporated, and from time to time thereafter elect the requisite officers, and the authorities adopt ordinances, work upon the streets, etc., this will afford conclusive evidence of the acceptance of the streets and other public grounds by the public, and will vest the legal title thereto in the corporation, in trust for the public use.

7. LIMITATION — *as against public rights — of adverse possession as against the public.* A municipal corporation holds the legal title to the grounds dedicated for streets and public squares, in its governmental capacity, in trust for the public use, and therefore can not invest private parties with any rights inconsistent with that use; and the Statute of Limitations will not, therefore, run in favor of a private party to bar the rights of the public.

8. The mere permitting of the dedicator of a public street or square to remain in possession of the same, when he, at the time, disclaims hostility to the public, could not form any bar to the public rights under the Statute of Limitations, even if it applied against the public.

9. ESTOPPEL—*municipal corporation—to assert public right to a street, after acquiescence in its use by private individuals.* Where the public have long withheld the assertion of control over streets, and private parties have been, by the act of those representing the public, induced to believe the street has been abandoned, and on the faith of such belief, and, with the acquiescence of the public authorities, have placed themselves, by making structures or improvements in the street, in a situation where they must suffer great pecuniary loss if those representing the public be allowed to allege that the street has not been abandoned, the doctrine of equitable estoppel may be applied.

10. NOTICE—*possession by private person of property dedicated for a public square—whether notice to surrender is necessary.* Where a private person is in the possession of a public square of a village, in subordination to the rights of the public authorities, holding by mere sufferance, he will be entitled to no notice to surrender the same. Neither will he if his possession is unlawful. In either case, the village authorities may enter and take possession for the public, and maintain trespass for any subsequent interference with the possession.

11. TRESPASS — *of the possession necessary to maintain the action.* Where village trustees rightfully enter and dispossess a party, of a public square, and streets, who has no right thereto by contract, prescription or estoppel, their possession thus acquired will be lawful, and will enable them to maintain trespass against the party so dispossessed, and those acting under him as his servants, for an attempt on their part to regain possession.

12. BILL OF EXCEPTIONS—*what it must contain—in order to present the question of admitting in evidence a written instrument.* Where it is claimed that an instrument of record, affecting title or other right, is im-

20—118 ILL.

properly admitted in evidence, the instrument or record itself must be set out accurately and at length in the bill of exceptions.

13. To prove a statutory dedication of land for a public square, the plat of the town was given in evidence, but it was not copied into the bill of exceptions. The bill of exceptions simply recited that such plat, so read in evidence, was found on certain pages of a record book, and "consisted of twenty-two blocks, of the usual size in towns and villages, and a plat of ground designated 'public square.'" It was objected in this court, on appeal, that from this evidence the size, shape or boundaries of the public square could not be determined, but it was *held,* that as the plat was not copied into the bill of exceptions, it would be presumed that the plat warranted the ruling of the trial court, and proved what it was offered to prove.

14. LAW AND FACT—*what is a question of law—so as to be the proper subject of an instruction.* Where the plat of a village is given in evidence, as showing the dedication of a public square, there is no error in telling the jury, by an instruction, that it is a plat of the village, as the affect of the instrument is a question of law, for the court. Nor is it error to instruct the jury that the act of becoming incorporated was an acceptance of the dedication, as the effect of the incorporation is also a question of law.

15. ERROR *will not always reverse—improper instruction.* Although an instruction relating to the sufficiency of a town plat to convey title to a square to the public, and the evidence of its acceptance, may be erroneous, in submitting a question of law to the jury, yet if there is satisfactory and conclusive evidence of such dedication and acceptance, the error working no injury, affords no ground of reversal.

16. PRESUMPTION —*in support of judgment and ruling below.* On appeal or writ of error, the presumption is that the court below decided correctly, until the contrary is made to appear; and this must be, not from the inferences of any one, but from the actual facts as they occurred on the trial.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Brown county; the Hon. S. P. SHOPE, Judge, presiding.

This was an action of trespass. The declaration has three counts. It is alleged in the first count that defendants, on the 4th day of June, 1883, broke and entered the close of plaintiffs, known as the "public square," in the town of Mound Station, in said county, and broke down, damaged, destroyed and converted to their own use, a certain fence and gates, composed of posts, planks, rails, etc., standing on said prem-

ises, of the value of $200, etc. The second count is substantially the same as the first, except no particular lands are described, further than that they lie in the corporate limits of the said town of Mound Station, charging defendants, on no certain day mentioned, with entering such close and tearing down, destroying and converting to their own use, a certain fence, gates, posts, and hinges thereunto affixed, of the like value of $200, etc. The third count is trespass to personal property, consisting of posts, planks, rails, gates, etc., and converting the same to the use of defendants. The damages were laid at $200.

General issue was pleaded by all defendants, and *similiter.* Second plea by all defendants, of *liberum tenementum* as to defendant John Lee, and that all the property in the first two counts of the declaration mentioned as having been converted by defendants, was wrongfully and unlawfully upon, annexed to and incumbering the soil and freehold of defendant John Lee, and that defendant John Lee, in his own right, and the other defendants as his servants, and by his command entered upon said premises and removed said fence, gates, planks, posts, etc., as they lawfully might, etc. The third plea is by John Lee alone, to the second count of the declaration, averring that the lands and tenements therein referred to were the soil and freehold of him, the said John Lee, giving a proper description of the same, and that the property alleged to have been destroyed, damaged and converted by defendants, was wrongfully upon, annexed to and incumbering said premises, and that he, in his own right, and the other defendants as his servants, entered said premises and removed said property so incumbering the same, etc. The fourth plea is by all defendants, to the first count of the declaration, averring that said premises, therein described, were the soil and freehold of defendant John Lee, and that all the property charged to have been taken, damaged and converted by defendants, as in said count alleged, was wrong-

fully and injuriously put, placed and affixed upon and to said premises, and was incumbering the same, and that said John Lee, in his own right, and said other defendants by his command, as his servants, entered upon said premises and removed said gates, fences, planks, etc., doing no unnecessary damage, etc. Fifth plea of *nul tiel corporation* as to plaintiffs, and *similiter*.

The first replication is a general traverse of the second, third and fourth pleas, and issue to the country. Second replication to pleas two, three and four, that while one McNitt owned said premises before defendant John Lee, and on the 17th day of January, 1865, he dedicated the same to the public; that said premises lie within the corporate limits of the town of Mound Station; that said town became incorporated thereafter under the laws of this State, and the corporate authorities of said town accepted said dedication, and that by said dedication and acceptance the use and control of said premises were by law transferred and conveyed by McNitt to said corporate authorities, and that plaintiff, as such corporate authorities, entered upon said closes, and have been in possession thereof ever since, and were so in possession at the time of the trespass charged in the declaration, and that defendants entered thereon of their wrong, and without right, etc., and issue thereon.

The jury returned a verdict, finding defendants guilty, and assessing plaintiff's damages at $60. The court, after overruling a motion for a new trial, entered judgment upon this verdict, and defendants prosecute this appeal, and assign numerous errors.

Mr. WILLIAM L. VANDEVENTER, for the appellants:

The plat of the town, in evidence, fails to show the size or shape of any of the lots, blocks, streets or other public grounds, and, from it, no one can locate the so-called public square. This defect is fatal. *Winnetka* v. *Prouty,* 107 Ill. 223.

In order to constitute a common law dedication, there must be shown a clear and unequivocal intention to dedicate some well defined and particular parcel of land. *Warren* v. *Jacksonville,* 15 Ill. 240; *Chicago* v. *Johnson,* 98 id. 618; *McIntyre* v. *Storey,* 80 id. 127; *Princeton* v. *Templeton,* 71 id. 68; *Marcy* v. *Taylor,* 19 id. 634; *Gentleman* v. *Soule,* 32 id. 571; *Harding* v. *Town of Hal,* 61 id. 193; *Kelly* v. *Chicago,* 48 id. 388.

To consummate a dedication, the evidence must clearly show an acceptance before a revocation or withdrawal of the offer by the owner. *Littler* v. *Lincoln,* 106 Ill. 353; *Winnetka* v. *Prouty,* 107 id. 223; *Forbes* v. *Balenseifer,* 74 id. 183; *Insurance Co.* v. *Littlefield,* 67 id. 369; *Proctor* v. *Lewiston,* 25 id. 153; *Grube* v. *Nichols,* 56 id. 93.

Although the Statute of Limitations does not run against the public in respect to public rights, yet if there has been a complete non-user on the part of the town for twenty years, and the owner has done some act clearly inconsistent with the original right or title of the town, an abandonment may be presumed. *Winnetka* v. *Prouty,* 107 Ill. 225; *Peoria* v. *Johnson,* 56 id. 51; *Railroad Co.* v. *Joliet,* 79 id. 26.

Even the true owner of land can not resort to force or violence to recover or acquire pessession admitted to be wrongfully withheld by another in peaceable possession. *Reeder* v. *Purdy,* 41 Ill. 279; *Page* v. *DuPuy,* 40 id. 506; *Farwell* v. *Warner,* 51 id. 467; *Reeder* v. *Purdy,* 48 id. 261; *Dearlove* v. *Herrington,* 70 id. 251; *Haskins* v. *Haskins,* 67 id. 446; *Doty* v. *Burdick,* 83 id. 473; *McCartney* v. *Hunt,* 16 id. 76.

Under the general issue, the plaintiffs must prove, first, that the party was in his possession at the time of the alleged injury, and that defendant committed the injury. 2 Greenleaf on Evidence, sec. 613; *Winkler* v. *Meister,* 40 Ill. 349; *Cook* v. *Foster,* 2 Gilm. 652; *Smith* v. *Wunderlich,* 70 Ill. 426; *Railroad Co.* v. *Cobb,* 94 id. 55; 1 Chitty's Pleading, (12th Am. ed.) 500, 502.

When a party is expelled from a peaceable possession by a lawless violence, he may reënter at once, if he can, without a breach of the peace, and no such reëntry will be a trespass against the original invader. *Railroad Co.* v. *Cobb*, 82 Ill. 183; 94 id. 57.

Messrs. IRWIN & DOBBIN, for the appellees:

Dedication is a mixed question of law and fact, and the jury should be instructed that surveying the land, acknowledging and recording the plat, and selling lots with the streets as an abuttal, amounted, in law, to a dedication. *Waugh* v. *Leech*, 28 Ill. 492; *Trustees* v. *Haven*, 11 id. 554; *Stephani* v. *Brown*, 40 id. 42; *Gebhardt* v. *Reeves*, 75 id. 303; *Railroad Co.* v. *Hartley*, 67 id. 439.

If once dedicated, they, unless reclaimed by the owner in some mode authorized by law, remain public, and open to the use of the public whenever they may choose to appropriate them. *Waugh* v. *Leech*, 28 Ill. 492; *Godfrey* v. *Alton*, 12 id. 29; *Trustees* v. *Haven*, 11 id. 554; *State* v. *Trask*, 6 Vt. 355.

Where there has been a statutory dedication of streets, public grounds, etc., such dedication can only be vacated by a deed of vacation, according to sections 6 and 7, of chapter 109, of the Revised Statutes of 1881. *Littler* v. *Lincoln*, 106 Ill. 353; *M. E. Church* v. *Hoboken*, 4 Vroom, 13.

An acceptance of a proffered dedication may be shown or "proven" by user by the public, as, by travel, or by the acts of the public officers in repairs and works; but it is not essential that work should have been done, for it may not have been needed. *Marcy* v. *Taylor*, 19 Ill. 636; *Rees* v. *Chicago*, 38 id. 322; *Dimon* v. *People*, 17 id. 416; *Alvord* v. *Ashley*, id. 363; *Smith* v. *Flora*, 64 id. 93.

Where there is a statutory or common law dedication of streets or "public grounds," it is an unrestricted dedication to public use. *Railroad Co.* v. *Joliet*, 79 Ill. 25; *Trustees* v. *Haven*, 11 id. 554; *Hunter* v. *Middleton*, 13 id. 50.

A town has discretionary power as to the time of opening streets, which can not be inquired into. *Dunlap* v. *Mt. Sterling,* 14 Ill. 251; *Curry* v. *Mt. Sterling,* 15 id. 320; *Aurora* v. *Pulfer,* 56 id. 270; *Chicago* v. *Martin,* 49 id. 241.

A literal compliance with the statute in reference to town plats is not necessary. Any competent surveyor may make the survey and plat. *Gebhardt* v. *Reeves,* 75 Ill. 303.

Where a municipal corporation holds property in trust, neither mere non-action of its officers nor the Statute of Limitations can be set up against it. *Railroad Co.* v. *Joliet,* 79 Ill. 25; *Logan County* v. *Lincoln,* 81 id. 156; *Piatt County* v. *Goodell,* 97 id. 84; *Prince* v. *McCoy,* 40 Iowa, 533; *Alton* v. *Transportation Co.* 12 Ill. 38; *San Francisco* v. *Canavan,* 42 Cal. 541; 2 Dillon on Mun. Corp. secs. 529-533; Angell on Limitations, sec. 29.

Public squares, when dedicated, may be inclosed and beautified. 2 Dillon on Mun. Corp. (2d ed.) sec. 509, note; *Princeton* v. *Auten,* 57 Ill. 325.

Doctrine of estoppel, as applied to municipal corporations, implies more than *laches,* neglect or non-action of officers, but is dependent upon affirmative acts of such officers. *Railroad Co.* v. *Joliet,* 75 Ill. 25; *Peoria* v. *Johnson,* 56 id. 51; *Logan County* v. *Lincoln,* 81 id. 158; *Alton* v. *Transportation Co.* 12 id. 38; 2 Dillon on Mun. Corp. secs. 532, 533.

Where a record is once completed, no subsequent unauthorized alteration, mutilation or destruction can change its original effect. *Merrick* v. *Wallace,* 19 Ill. 496; *Steele* v. *Boone,* 75 id. 457; *Shannon* v. *Hall,* 72 id. 354; *Midlim* v. *Pratte,* 8 Mo. 138; 1 Greenleaf on Evidence, (12th ed.) sec. 566, note.

The Statute of Limitations in no case applies to a municipal corporation until it is incorporated. *Riley* v. *Chouquette,* 18 Mo. 220.

Per CURIAM: First, it is objected that it can not be determined, from the evidence in this record, what is the locality, size, shape or boundaries of the lots, streets, public square, etc., as claimed to be laid off, and *Village of Winnetka v. Prouty,* 107 Ill. 222, is cited in support of the objection. In that case, the plat of the town was fully set out in the record, so that the court could see everything which appeared upon it. Nothing was left to inference. It affirmatively appeared that no width of streets, or size of lots or block, was designated in the attempt to lay out the ground. That is not the case here. It is here recited, in the bill of exceptions, that "said plat, so read in evidence, covers and occupies two opposite pages of said book 'S,' numbered 292 and 293, and on the reverse side of the leaf on which No. 293 is found, and on pages No. 294, 295 and 296 of said book 'S,' are field notes of a town plat of Mound Station, made for Martin McNitt, with a certificate of acknowledgment made by a justice of the peace of said county, dated 19th November, 1862.  *  *  * The said plat, so read in evidence, consists of twenty-two blocks, of the usual size in towns and villages, subdivided into lots, with streets and alleys, and a plot of ground designated 'public square.'" This, it is to be noticed, appears not as a copy of anything appearing on the face of the plat, but as a conclusion of the attorney writing the bill of exceptions. If he was authorized to conclude that the blocks were of the usual size in towns, the inference is reasonable that the plat, in some way, showed the size of those blocks. The presumption is, that the court below decided correctly, until the contrary is made to appear,—and this must be, not from the inferences of anybody, but from the actual facts occurring upon the trial. Where it is claimed, as here, that an instrument or record affecting title is improperly admitted in evidence, the instrument itself must be set out accurately and at length, in the bill of exceptions. (*Rogers v. Hall,* 3 Scam. 5; *McLaughlin v. Walsh,* id. 185; *Thomas v. Leonard,* 4 id.

556; *Glancy* v. *Elliott*, 14 Ill. 456; *Ballance* v. *Leonard*, 37 id. 43; *Hayes* v. *Lawver*, 83 id. 182.) The plat and field notes not being copied in the bill of exceptions, we must presume they warranted the ruling of the court.

*Second*—It is next objected that the court erred in admitting in evidence the record of the plat, because the plat first made and acknowledged by McNitt was subsequently erased and destroyed by his order, and he made no new plat. The facts conceded are: McNitt made and acknowledged a plat on the 19th of November, 1862. This plat was certified by Parke, surveyor. McNitt, afterwards, being under the impression that it was necessary that the plat should be certified by a county or deputy county surveyor, and ascertaining that Parke was neither, employed Black, who was deputy county surveyor, to make a new plat. He adopted the work of Parke, in substance, made a new plat and signed it, and then went to the record of the plat made by Parke, erased Parke's name therefrom, and substituted his own, as deputy county surveyor. The statute does not make it indispensable that the plat shall be certified by the county surveyor or deputy county surveyor. It may be certified by either, or by any "competent surveyor," and the certificate of Parke was sufficient under the requirement. 2 Starr & Curtiss' Stat. p. 1764, sec. 2; *Gebhardt* v. *Reeves*, 75 Ill. 305.

It would seem too evident to need argument in its support, that after the record was made it passed beyond the control of McNitt. He might afterwards make a new and additional record, but he could not nullify or impair that. It would remain, in a legal point of view, just as it was when it was copied upon the records of the county. This principle is recognized and applied in *Merrick* v. *Wallace*, 19 Ill. 496, *Shannon* v. *Hall*, 72 id. 354, and *Steele* v. *Boone*, 75 id. 457. It is true, until acceptance by the public, McNitt might revoke the dedication by deed; but there is no pretence that this attempt at making a new plat was, or that it was intended

to be, such a revocation. Its purpose was to perfect, not to destroy, a dedication. There was, therefore, in our opinion, competent and sufficient evidence for the jury that the plat recorded was that made by McNitt, and that the several pages copied were of consecutive pages of the recorded plat and annexed field notes, and hence there was no error in admitting the record of the plat in evidence.

*Third*—Evidence was given, over the defendant's objection, that this square was, on one occasion, not assessed by the assessor as private property. We think the evidence was admissible, as tending, though it may be very slightly, to show a public acceptance of the dedication, and an acquiescence therein by McNitt. And inasmuch as it is the fact, and not the mere record, that can be of any significance in that respect, we think it was susceptible of proof by parol. But, in any view, the square ought not to have been assessed as private property, and the ruling could, therefore, do the defendants no harm.

*Fourth*—It is objected that the first instruction is erroneous, because it submitted questions of law to the jury. Those questions relate to the sufficiency of the plat to convey title to the public, and the evidence of acceptance. Without caring to inquire whether the reasonable construction of the instruction sustains the objection, as a matter of fact, we content ourselves by saying, the error, if it exists, could do defendants no harm. If we are right in holding that, inasmuch as counsel have not transcribed the record of the plat and field notes into the bill of exceptions, we must assume they sufficiently proved what they were offered to prove, it must follow, as a matter of law, that the record of a plat was read in evidence, which operated as a conveyance in fee simple of such portions of the premises platted as were marked or noted on such plat as donated or granted to the public, and as a general warranty against the donor, his heirs and representatives, to such donee or grantee, for the uses

and purposes therein named, and for no other use or purpose, etc. (2 Starr & Curtiss' Stat. p. 1764, sec. 3.) No one pretends that McNitt ever made any deed revoking that dedication. True, the proof shows that he remained in possession, but it also shows that throughout the time he remained in possession, at various intervals, up to July 8, 1875, he acknowledged, by indirection, if not directly, that he had made the dedication, and he also, during that period, made various conveyances predicated upon the good faith and validity of his dedication, and in one deed conveying land in the same quarter section, but outside of this plat, he used this exception: "Except that portion of said quarter section laid off and included in the town of Mound Station, as recorded in the recorder's office in Brown county," and then referring to the same book and pages from which the record of the plat here read in evidence is copied,—and as to these declarations, conveyances, etc., there is no countervailing proof. It is, moreover, further recited in the bill of exceptions, "that on the 17th day of January, 1865, a vote was had in said town of Mound Station upon the question whether the same should become incorporated or not, which resulted in favor of incorporation; and it was admitted by defendants that said town was duly incorporated, under the law of 1845, on that day." Other evidence recited shows the election of the requisite municipal officers from time to time, the adoption of ordinances, working upon streets, etc. And it is distinctly proved that the square in controversy is within the limits of the town as thus incorporated. In our opinion, this is conclusive evidence of the acceptance of the dedication by the public. McNitt lays off certain territory as an addition to a town, makes the necessary plat, etc., and that territory thus laid off and platted becomes incorporated. Its limits must, in part, be the limits of McNitt's plat, and its streets, alleys and squares must also, in part, be those indicated and marked as such on his plat. The Mound Station incorporated is the

Mound Station created in part by McNitt's plat, for there is no other. It would seem difficult to give more conclusive evidence of the acceptance of the dedication. *City of Des-Moines* v. *Hall,* 24 Iowa, 234.

There is no authority for holding that every street or square should have been forthwith opened and improved. The corporation has a discretion as to the time within which such things may be done. The court might, then, have told the jury, that, under the evidence, it was their duty to find that the fee of the square was vested in the public by the plat,— that the dedication had not been legally revoked, but had been legally accepted by the public,—for this is the legal effect of the record evidence before them; and their finding, under this instruction to that effect, could, in no view, be prejudicial to any rights of the defendants.

*Fifth*—It is objected that the second instruction given at the instance of the plaintiff is erroneous, because it does not specify what acts would constitute such a dedication as therein contemplated, and in requiring a longer period of adverse possession to authorize the jury to find that the town had lost its right by non-user or non-claim, than is required by law. Inasmuch as there was ample evidence of a statutory dedication before the jury, it is but reasonable to conclude that the jury would understand it was that dedication to which the instruction had reference, and it does not appear to us that it was probable that they could have been misled by the instruction, in that respect. Assuming that there was a statutory dedication, and an acceptance by the public, the title to the property was vested in the corporation *in trust* for public use. The corporation held it in its governmental capacity only, and could therefore invest private parties with no rights in it inconsistent with the public use, and the Statute of Limitations would not, therefore, run in favor of a private party, to bar the rights of the public. (*City of Alton* v. *Illinois Transportation Co.* 12 Ill. 38; *City of Quincy* v.

*Jones,* 76 id. 231, *Logan County* v. *Lincoln,* 81 id. 158.)   It is true, that we have held that where the public have long withheld the assertion of control over streets, and private parties havé been, by the acts of those representing the public, induced to believe the streets abandoned by the public, and on the faith of that belief, and with the acquiescence of those representing the public, they have placed themselves, by making structures or improvements in the street, in a situation where they must suffer great pecuniary loss if those representing the public be allowed afterwards to allege that the street was not abandoned, the doctrine of equitable estoppel may be applied. (*Chicago, Rock Island and Pacific Railroad Co.* v. *Joliet,* 79 Ill. 26.)   But there is no evidence of any of the necessary elements of equitable estoppel here. The mere permitting the original dedicator to remain in possession,—he at the time disclaiming hostility to the public,— would not be a bar, even under the Statute of Limitations, if it were applicable in such cases.   The instruction, if inaccurate, was more favorable to the defendants than they were entitled to have the law stated.   It could not prejudice their rights.

*Sixth*—What has been said will show that, in our opinion, defendants could not have been prejudiced by the plaintiff's third instruction.

*Seventh*—It is objected, against plaintiff's instruction numbered $4\frac{1}{2}$, first, that the court assumes that the plat made by McNitt was the plat of a town; and second, that the corporate authorities accepted the dedication.   The court can see, or, rather, could, if the plat had been incorporated into the record, as it should have been, by the counsel preparing the bill of exceptions, of what it is the plat, and the effect of the plat is a question of law.   There was no error in telling the jury that it was a plat of a town, especially since the defendants admitted that the town named in the plat, and of which the plat formed a part, had since been incorporated under the gen-

eral law. The effect of the incorporation was also a question of law, and we hold that, under the circumstances in evidence, it was an acceptance of the dedications in the plat, and so, in our opinion, the instruction is correct in both respects.

*Eighth*—The fifth of plaintiff's instructions is objected to as a mere abstraction. It is entirely consistent with the law, as we understand it, and even if it be conceded that it was unnecessary, we fail to perceive how it could have misled the jury to the prejudice of the defendants.

*Ninth*—Plaintiff's instruction No. $5\frac{1}{2}$ is objected to, because it tells the jury that an acceptance may be proven by working upon the streets. If we are right in concluding that the incorporation of the town, under the circumstances in evidence, was a conclusive acceptance of the dedications on the plat, it is wholly immaterial whether the language of this instruction is correct or not, since it could, by no possibility, have prejudiced the defendants.

*Tenth*—The question is presented, by rulings on other instructions, whether the plaintiff, having entered upon the public square while in the possession of Lee, and thrown down fences across the streets which run on its different sides, and enclosed the square and adjacent streets by a fence, acquired such a lawful possession that it could maintain trespass against the defendants for afterwards entering upon the square, by virtue of whatever right Lee may have had, and throwing down the fence around the square, destroying the fencing material, etc. It is not pretended that McNitt reserved any rights in this square by the plat which he made dedicating it to the public, and we have already said that, in our opinion, he could acquire no rights therein subsequently, either by grant from the corporation or by mere limitation. His possession, therefore, as against the public, must have been in subordination to its rights. If lawful, it must have been in trust for the public, and to enable those representing the public to appropriate it to its distinct use at

any moment they deemed advisable.  He held by mere sufferance, and in the absence of statutory requirement or express. contract, one so holding is entitled to no notice to surrender possession.  So, also, if his possession was unlawful, he was. a mere trespasser, and entitled to no notice to surrender. Wade on the Law of Notice, sec. 592; Taylor on Landlord and Tenant, (2d ed.) secs. 4, 64.

We held in *Fort Dearborn Lodge* v. *Klein et al.* 115 Ill. 177, that where the owner of land having the right to the immediate possession, makes an entry thereon in a quiet and peaceable manner, or without actual force or violence, he is. not liable in trespass to one who has neither the right of property nor a right to the possession.  Plaintiff having lawfully obtained possession, then, by this act of entry, is unquestionably entitled to maintain trespass against those who have tortiously invaded it.

These views sustain the ruling of the court below on all the other questions, not before herein specifically noticed, which, in our opinion, demand attention.

On the whole, we are unable to discover any such prejudicial error to the rights of the defendants, in the record, as will justify us in reversing the judgment below.   It is therefore affirmed.                              *Judgment affirmed.*

Mr. CHIEF JUSTICE SCOTT, dissenting.

Mr. JUSTICE SHOPE having tried this cause in the circuit court, took no part in the consideration thereof in this court.