W. N. EISENDRATH & CO. *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed October 24, 1901.*

1. STREETS AND ALLEYS—*what does not support a claim of adverse possession of a public street.* Want of power on the part of a city to lease a portion of a public street cannot be set up by the lessee as a basis for his claim of adverse possession of the portion of the street covered by the lease.

2. SAME—*what sufficient proof of acceptance of platted street by a city.* In a proceeding under the Burnt Records act to confirm title to the petitioner's lots and also to an adjoining piece of ground embraced within the limits of a platted street, sufficient proof of the city's acceptance of the latter as a public street is made by evidence that the petitioner's occupancy of the ground had always been under leases from the city, in which the ground was recognized as a public street and the right to terminate the leases at any time was reserved; that the city had several times ordered the obstruction removed but had yielded to the petitioner's importunities and allowed him to remain in occupancy, and that no taxes or assessments were ever levied against the property after the owner platted it as a street and offered it to the city.

3. SAME—*sale of lots with reference to platted street raises an estoppel.* Although a plat of an addition to a city has not been properly acknowledged, yet if the owner of the land so platted makes sales of lots abutting upon a platted street and with reference to the plat, he and those claiming under him are estopped to deny the existence of the street so shown upon the plat.

APPEAL from the Circuit Court of Cook county; the Hon. EDMUND W. BURKE, Judge, presiding.

PENCE & CARPENTER, for appellant W. N. Eisendrath & Co.

RUBENS, DUPUY & FISCHER, for appellant Paepcke-Leicht Lumber Company.

CHARLES M. WALKER, Corporation Counsel, (GRANVILLE W. BROWNING, of counsel,) for appellee.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

On the 30th of November, 1835, one John F. Wight, being the owner of the premises, platted and recorded that part of the east half of the south-east quarter of section 5, township 39, north, range 14, east of the third principal meridian, south of the north branch of the Chicago river, as "Wight's addition to Chicago," the plat being as follows:

On January 3, 1898, W. N. Eisendrath & Co., a corporation, filed its petition in the court below under the Burnt Records act, claiming title to lots 12 and 13 in block 3 and the south-easterly part of lot 1 in block 6, and the strip of land sixty-seven feet wide between lot 13

in block 3 and lot 1 in block 6, as shown upon said plat, and asking to have its title confirmed to all of said property. The city of Chicago and the Paepcke-Leicht Lumber Company, with others, were made defendants. The petitioner claimed title to said lots 12 and 13 by *mesne* conveyances from John F. Wight, and to the strip between blocks 3 and 6 and to the part of lot 1 by prescription, alleging that it and its grantors had been in the actual possession thereof, adversely to all the world, for more than twenty years prior to filing its petition. It also claimed title to said sixty-seven feet as abutting owner of lot 13 and the south-easterly part of lot 1. The city of Chicago by its answer denied petitioner's title to the sixty-seven feet and claimed the same as a public street. The lumber company also answered the petition, denying petitioner's ownership to any part of lot 1, and setting up title to that lot in itself by *mesne* conveyances from John F. Wight. This company also filed its cross-petition, asking to have its title to lot 1 confirmed, and claiming the north-westerly half of the sixty-seven feet as abutting owner of lot 1. The original petitioner and the city of Chicago answered the cross-petition, the former setting up the same claim it had made in its original petition, and the city claiming as in its answer to that petition. On a hearing the court found and decreed the sixty-seven feet to be a public street by a common law dedication made by John F. Wight and accepted by the city of Chicago, and that original and cross-petitioners each owned the fee to the center of the street as abutting owners, but subject to an easement in the public. To reverse that decree petitioner and cross-petitioner appeal.

The original petitioner has abandoned its claim to any part of lot 1 in block 6, and hence to the north-westerly half of the sixty-seven feet as an abutting owner. It still insists, however, that it owns the whole of that strip by prescription; and also that, in any event, it is the owner of the south-easterly half of it as abutting owner

of lot 13.   The cross-petitioner joins the city of Chicago in its denial of the original petitioner's title by limitation, but claims, with the latter, that there is no easement over any part of the sixty-seven feet in favor of the public as a street, and it claims the north-westerly half thereof in fee as abutting owner of lot 1.

All parties agree that the plat made and recorded by John F. Wight is not a good statutory dedication of the streets to the public, but it is alleged in the original petition that the sixty-seven feet in controversy "was intended by said John F. Wight to be dedicated as a street for the use of the public, and was offered by the said John F. Wight to the city of Chicago as a street." This allegation was admitted by the city of Chicago, and the master to whom the case was referred to take the proofs, found and reported that "the aforesaid strip of land sixty-seven feet in width between the aforesaid lot 1 in said block 6 and lot 13 in said block 3, in said Wight's addition, was intended by John F. Wight to be dedicated as a street for the use of the public, and was offered by the said John F. Wight to the city of Chicago as a street." No objection or exception was filed by any of the parties to that report.   It is, however, averred in the petition that neither the city of Chicago nor the public had accepted said offer, which allegation is denied by the city of Chicago, and, as above stated, the circuit court found that the offer had been accepted by the city.

It is conceded that lots in said Wight's addition to Chicago have been sold and conveyed with reference to the streets as shown by said plat, and it is clear from the allegations of the petition, cross-petition and proofs that lot 1 in block 6 and lot 13 in block 3 were conveyed as fronting on the strip sixty-seven feet wide as a street. We regard it as perfectly clear from the plat that the proprietor, John F. Wight, intended the strip to be an extension of Fifth street, (now called Sangamon street,) and this fact, as we conceive, cannot be made clearer by

argument. All the parties to this suit, as shown by the uncontradicted testimony of all the witnesses, knew and understood that it was a part of that street. From the making and recording of the plat in November, 1835, to the filing of the petition, no assessment for general taxes and no special assessment has ever been levied upon the said strip. It is admitted that at the time of filing its petition W. N. Eisendrath & Co. occupied the same with a tannery establishment, and it and those from whom it purchased the tannery had been in such occupancy since about the year 1874. It clearly appears, however, and without denial, that during all that period such occupancy was by and with the consent of the city of Chicago, much of the time under written leases from it, W. N. Eisendrath & Co. even holding such a lease at the time of filing its petition, and continued to pay rent therefor nearly three months after the petition was filed.

There appears in the record a lease from the city of Chicago to William N. Eisendrath, dated May 1, 1892, conveying all the right, title and interest of the city of Chicago in and to so much of the land covered by Sangamon street as lies between the east line of Dix street and the west dock line of the north branch of the Chicago river, together with the wharfing privilege at the end of said Sangamon street, excepting and reserving (to be always kept free from obstruction for the use by the public) a space twenty feet in width in and adjoining the center of said Sangamon street through said premises to said river, and a space five feet in width entirely across the end of said Sangamon street; expires May 1, 1893; consideration, $750; option to renew the lease. Also a similar lease made in 1894, to expire April 1, 1896, in consideration of $750 per annum, and another dated August 15, 1896, to expire March 31, 1899, in consideration of $500 per annum. These leases, except the last, also contain the stipulation: "And it is further agreed by the parties hereto that this lease shall be terminated at any

time said city may require the use of said leased prem-
ises for the purpose of any public improvement."

William N. Eisendrath, the president of the company,
himself testified on his cross-examination: "From 1876
on we paid the rent to the city for the use of Sangamon
street from Dix to the river,—that is, my father paid it
and we re-paid the same to him, and between 1886 and
1891 we paid it ourselves, directly. I don't think we took
a lease from the city until five or six years ago, but we
paid rent right along, directly and through my father,
from 1876 to 1891,—$300 during 1881, up to 1888; and 1889
down to 1891 at the rate of $300 a year. * * * We
paid rent in advance up to the 30th day of April, 1898,
for this so-called Sangamon street, from Dix street to
the river." (The petition was filed January 3, 1898.) The
evidence clearly shows that this witness frequently ad-
mitted that he had no claim to the street but was only a
tenant, and that the city could compel him to remove his
buildings at any time; that he procured Paepcke, the
owner of lot 1, who had demanded of the city that the
street be cleared of the obstruction in 1885, to go with
him to the city comptroller's office and withdraw his de-
mand, and that he then asked the comptroller to permit
him to remain in the street, and he did not claim in any
part of his testimony, upon the hearing, that his com-
pany at any time occupied the street adversely to the
city. Notwithstanding these facts it is now insisted on
behalf of petitioner, W. N. Eisendrath & Co., that its
possession of the street has been hostile to or adverse to
the city of Chicago so as to ripen into an absolute title in
fee simple. This position rests upon the alleged ground
that the city had no power to lease the street to it or
consent to its occupancy of the same.

Conceding that the city abused its power in attempt-
ing to give its consent or to authorize the complainant
to obstruct the street, it is impossible to see upon what
principle the complainant can be heard to say that its

possession was therefore hostile to the city. It certainly cannot be seriously contended that a party may procure the unauthorized consent of a municipality to occupy one of its public streets, alleys or parks, and afterwards set up the Statute of Limitations so as to defeat the public right. It may be the city by these leases abused its power and authority over the street, but it clearly recognized thereby its existence and the public right thereto. The city reserved, to be always kept free from obstruction for the use of the public, a space twenty feet in width in and adjoining the center of said Sangamon street, through said premises to the river, and a space five feet in width entirely across the end of Sangamon street. The complainant, Eisendrath & Co., by accepting these leases, admitted the right of the city to make them and the right of the public to have the street kept open for its use. There is to our minds wanting every element of adverse possession in the occupancy of this street, which is always essential to the maturity of a title by prescription or limitation. Complainant below has wholly failed to show title to the property by prescription.

We think it equally clear that the offer of Wight to dedicate the street has been accepted by the city. It has always been opened from Dix street to the river, except as obstructed by the complainant in the original bill. It is shown by the leases to complainant, as we have seen, that the city claimed it as a public street and reserved the right to terminate the leases at any time. The evidence shows that the city authorities from time to time ordered the obstruction removed, and the complainant, by importunities, procured its consent to the occupancy of the same. The fact that no taxes or special assessments were levied upon it after it was platted is some evidence of acceptance. (*Lee* v. *Town of Mound Station*, 118 Ill. 304; *Earll* v. *City of Chicago*, 136 id. 277.) The rule is, that formal acts of acceptance are not necessary, but whatever indicates an intention to do so is sufficient.

We are at a loss to perceive how these parties, the complainants in either the original or cross-bills, can be heard to say the strip of ground between their lots has not been accepted by the city. First, we find the original complainant leasing it, from time to time, as a street, agreeing to protect the public right to use it as such, admitting, from time to time, that it is a street, and that complainant's only right there was as a tenant. Then the cross-complainant complains to the city authorities that the street is being obstructed, and finally goes with W. N. Eisendrath to the city authorities, and at his request withdraws the objections. The acceptance of the offer to dedicate is not of controlling importance in cases of this kind. Here was a plat of a town or an addition to a city. Lots, blocks, streets and alleys were plainly designated upon it and placed upon record. Thereby the proprietor offered to dedicate to the public every street and alley so indicated. Lots were sold in the addition with reference thereto. The offer to dedicate the street is a continuing offer as to the purchasers of lots, and can not be revoked by the proprietor of the plat. "Where the owner of land has the same platted, showing a street, and sells a part with reference to such street, which is mentioned in the description in the deed, although the street is not opened or the map thereof acknowledged or recorded, this will be an immediate dedication of the street as to such purchaser, and the grantor and all persons claiming under him will be estopped from denying the existence of the street." (*Zearing* v. *Raber*, 74 Ill. 409.) "Although a town plat or a plat of an addition has not been properly acknowledged, yet if the owner of the land so platted makes sales of lots with reference to such plat, abutting upon what is marked as a street, he and those claiming through him will be estopped from questioning the existence of the streets as shown on the plat. Such acts will create a common law dedication. Such sale of lots by the plat confers upon the purchasers the right to

have the street therein described, and upon which their lots abut, remain open forever; and such right is not a mere right that the purchasers may use the street, but is a right vested in the purchaser that all persons may use it." (*Earll* v. *City of Chicago, supra; Clark* v. *McCormick,* 174 Ill. 164; *Village of North Chillicothe* v. *Burr,* 185 id. 322.) Under these authorities the parties here own Sangamon street between Dix street and the river, each to the center, as abutting owners of lots 13 and 1, subject to the easement in the public to have it kept open as a street.

The decree of the circuit court is right, and it will be affirmed.

*Decree affirmed.*