WILLIAM V. GUTTERY *et al.*

*v.*

JAMES A. GLENN.

*Opinion filed February 13, 1903.*

1. MUNICIPAL CORPORATIONS—*board of trustees has right to enclose "public square."* The board of trustees of a town or village has a right to enclose the public square, which has been dedicated to the public, and set out trees and otherwise beautify the same.

2. DEDICATION—*dedication may be made by survey and plat alone.* If it is evident from the face of a plat that it was the intention of the proprietor to set apart certain grounds to the public, the dedication is sufficient without any oral or written declaration.

3. SAME—*whole plat is to be considered in ascertaining intention.* In ascertaining the intention of the proprietor from the face of his plat the whole instrument must be considered.

4. SAME—*when public square is not crossed by street.* Space marked upon a plat with the words "Public Square" will be held to include the entire space, and not to be crossed by a street, where the street lines are not extended across such space and there is nothing to show it was not the proprietor's intention to reserve the entire space for the public.

5. INJUNCTION—*public nuisance not ordinarily enjoined at suit of individual.* The closing of a street by the board of trustees of a town or village is a public nuisance, which will not be enjoined at the suit of a private person unless he suffers therefrom a special injury distinct from that suffered by the public at large.

6. SAME—*what not such special injury as authorizes injunction.* The closing of a public street not adjacent to complainant's property nor affording direct access thereto, merely causing him inconvenience in going from his premises to a certain part of the town, is not such special injury as entitles him to an injunction.

APPEAL from the Circuit Court of Logan county; the Hon. JOHN H. MOFFETT, Judge, presiding.

This is a bill for injunction, filed in October, 1901, in the circuit court of Logan county by the appellee, James A. Glenn, against the appellants, William V. Guttery, as president, and six other persons, composing the board of directors of the village of Middletown, and Walter Rayborn, clerk of said village, alleging that a certain street, shown on the plats hereinafter mentioned and called Union street, runs east and west, and crosses the public square in said village, and praying that the appellants, as the board of trustees of said village, may be enjoined from maintaining a fence upon and across said Union street at the places named in the bill. A preliminary injunction was granted, restraining the appellants from erecting fences, tabernacle, building or buildings, planting trees, etc., upon the public square across the line of Union street in said village. An answer was filed by the present appellants, who were defendants below, denying the material allegations of the bill; the court refused to dissolve the preliminary injunction upon the motion of the appellants. The cause was referred to a master in chancery to take and report the evidence.

Upon the hearing of the cause, the court entered a decree, finding that appellee, Glenn, owned certain property fronting upon Madison and Union streets, as shown upon the plats, and finding that Union street extended upon, along and across the public square, as designated upon the plat, and that the appellants were erecting, or causing to be erected, a chain around what is designated on the plat as the "Public Square," thereby enclosing and obstructing Union street where said street crosses the public square, and that appellants were intending to place, and did place, obstructions in said Union street by placing posts and a continuous chain across the same, thereby preventing said street from being used for travel

by wagons and teams and persons riding on horseback; and the court found that, to the extent that the injunction issued to prevent obstructions in Union street, the same should be made perpetual. By the terms of the decree the appellants and their agents were ordered and directed to remove from Union street any obstructions in the way of fences or chains, so that the same might be used by the public for travel. The present appeal is prosecuted from the decree so entered by the circuit court.

The original town of Middletown, which was then in Sangamon county, was laid out in October, 1832; the following is a copy of the plat of said original town, together with the surveyor's note attached thereto, and the certificate of acknowledgment thereof by the owner:

"Surveyed for Hiram S. Allen the town of Middletown, containing sixty-four lots of the following size, to-wit, 60 feet in front and running back 120 feet. Main street is 80 feet wide. Main cross-street is 50 feet wide; the balance of the streets are 40 feet wide, situate in the S. E. corner of the E. ½ N. W. ¼ section No. 18 T. 19 N. West.

"Given under my hand Oct. 13, 1832.

JAMES C. STEPHENSON, *C. S.*"

"STATE OF ILLINOIS, }
*Sangamon County.* } *ss.*

"This day personally appeared before the undersigned, a justice of the peace in and for said county, Hiram S. Allen, who acknowledged that he had the town of Middletown, of which the within is a plat, laid out, that the streets, alleys and lots are as therein described, and that the same is his voluntary act for the said purpose.

"Given under my hand and seal this 19th day of October, A. D. 1832.    THOMAS MOFFETT, *Jus. Peace.*"

"Recorded Dec. 20, 1832, book F, page 167."

In 1836 an addition to Middletown was laid out. The original plat of this addition, as it appears in the record, extends from First street on the south to Fourteenth street upon the north. The following is a plat of the addition to Middletown from Third street to Eleventh street, inclusive, together with the surveyor's note and certificates, and the certificates of acknowledgment attached to or endorsed upon said plat:

"NOTE.—Monroe street is 40 feet wide.   Grove street is 50 feet wide.   Clinton and Madison streets are each 60 feet wide. Main street to Union street is 80 feet wide, from thence south is 50 feet wide.   All of the cross-streets except Second, Third, Fourth, Union and Main cross-streets are 40 feet wide and run east and west, crossing the others at right angles.   The lots are all 60 feet front with 120 feet depth, except those fronting the public square from the north and south, which are but 100 feet depth and 40 feet front."

"Surveyed for Jno. W. Casey, Ambrose C. Hankinson and H. S. Allen the E. ½ of the N. W. ¼ of sec. 18, in town 19 N., in range 4 west, beginning at the ¼ sec. corner on the N. of the sec. which I laid out in lots as per plat above on a scale of 200 feet to the inch.

"Given under my hand July 28, 1836.

T. M. NEALE, *S. S. C.*"

"Surveyed for M. L. Knapp and William Glenn the N. E. ¼ of the N. W. ¼ of sec. 18, town 19 N., range 4 west, commencing at the south-east corner of the town of Middletown, which I laid off into lots, as per plat above, connecting the same with the original town on a scale of 200 feet to the inch.    .    .

"Given under my hand July 28, 1836.

T. M. NEALE, *S. S. C.*"

"The old town platted above and numbered in lots from 1 to 64 not to be recorded with the above addition."

"On this day James R. Smith, agent and attorney for John W. Casey, Ambrose C. Hankinson and H. S. Allen of Tazewell county, came before me, the undersigned, a justice of the peace within and for the county of Sangamon and State of Illinois, and acknowledged the within plat as numbered to block 49 to be according to their directions, and hereby voluntarily relinquish their claims to the streets, alleys and public grounds mentioned on said plat to the public for public uses and benefits.

JAMES R. SMITH, *Agent for John W. Casey.*

AMBROSE C. HANKINSON,

HIRAM S. ALLEN.

"Acknowledged and signed before me this 28th day of July, 1836.        THOMAS MOFFETT, *J. P.*"

"On this day Moses L. Knapp and William Glenn, Jr., of Sangamon county came before me, the undersigned, a justice of the peace within and for the county aforesaid and State of Illinois, and acknowledged the within plat of the town of Middletown in said county as numbered from block 50 inclusive to have been surveyed agreeably to their instructions, and voluntarily relinquished their title and interest to the streets, square and alleys contained therein for public uses and benefit.

M. L. KNAPP,

WM. GLENN, Jr.

"Acknowledged and signed before me July 29, 1836.

THOMAS MOFFETT, *J. P.*"

"Recorded August 23, A. D. 1836.—Benjamin Talbott, *R. S. C.*"

Counsel for the appellee submit a map, showing the original town laid out in 1832, and the addition thereto laid out in 1836, as they appear together, showing that the plat of the original town, consisting of lots from 1 to 64, inclusive, lies within the space between Madison and Monroe streets on the east and west, and between blocks 29 and 30 of the addition on the north and blocks 50 and 51 on the south. The plat in question is as follows:

KING & MILLER, for appellants.

BLINN & HARRIS, for appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

Substantially, the only question to be determined in this case is, whether Union street, running from west to east, was intended by the original owners, who made the plat of the addition to Middletown, to cross the "Public Square," or whether Union street was intended to run from west to east as far as Clinton street on the west side of the square, and then to run from east to west as far as Madison street on the east side of the square. In other words, was Union street intended to cross the square, so as to divide it into two blocks, one on the north side of Union street, and one on the south side of Union street, or was it intended only to extend to the east and west sides of the public square, and not to run through the public square. It is conceded that, if Union street ran through the square as a street, then the enclosing of so much of the street as was within the public square, and between the east and west sides thereof, as a part of the public square, was an obstruction of a public street, and was unlawfully enclosed by the appellants, constituting the board of trustees of the village. But if Union street was not intended to run through the square, but only to come up to the east and west sides of the square, so that no part of it was inside of the square itself, then the appellants, as the board of trustees, had a right to enclose it, as a part of the park, and were not guilty of putting an obstruction in a public street.

In 1836, and from thence until 1900, the village of Middletown was a county village without any village organization; but in 1900 the village was organized and incorporated under the statutes of Illinois by the name of the "Village of Middletown," including, besides other

territory, the addition to Middletown, as shown in the statement preceding this opinion. From 1836 to the summer of 1901 all the main streets of the addition, including the street known as Union street, had been used and traveled by the public not only on foot, but also with horses and teams. In the summer of 1901 the village board of trustees, who are the appellants herein, through a resolution passed by them, caused a fence to be erected around the public square, bounded by Clinton street on the west, Sixth street on the north, Madison street on the east, and Fourth street on the south. This enclosure included so much of Union street, as would cross the public square, if Union street was extended through the square. Thereby, the public was excluded from traveling along Union street from Clinton street to Madison street and from Madison street to Clinton street across the square with wagons and horses. But it was the intention of the board of trustees to place openings or gates in such a way, as to enable people on foot to cross the public square through the middle, and from the four corners thereof. Prior to 1901 the square was open and unenclosed, and people on foot and on horseback, and with teams, had been in the habit of crossing the same from the north-east corner to the south-west corner, and from the north-west corner to the south-east corner, and through the middle of the square.

Under the law the board of trustees had a right to enclose the square, so that teams and wagons should not be allowed to pass through it, if the whole of the space, marked on the plat as "Public Square," was dedicated by the owners as such, and if Union street did not by the dedication cross the public square, so as to divide it into two parts. The board of trustees also had a right to set out trees in the square, so as to beautify the same, and to set out trees in the space alleged by appellee to have been included in Union street, if Union street did not cross the square.

In the American and English Encyclopedia of Law (vol. 17—1st ed.—p. 416), it is said: "The use and the beneficial purposes of a public square or common in the village or city, where no special limitation or use is prescribed by the terms of the dedication, are entirely different from those of a public highway. Such a place, thus dedicated to the public, may be improved and ornamented for pleasure grounds and amusements for recreation and health. * * * A public highway comprehends the right of all individuals in the community, whether upon foot, horseback, or in any kind of a vehicle, to pass and re-pass, together with the right of the public to do all the acts, necessary to improve it and keep it in repair, and it cannot be enclosed; but a public square may be enclosed, notwithstanding it has remained open many years." (Citing, among other cases, *Langley* v. *Gallipolis,* 2 Ohio St. 108; *Leftwitch* v. *Plaquemine,* 14 La. Ann. 148; *Hutchinson* v. *Pratt,* 11 Vt. 402). Dillon, in his work on Municipal Corporations (2d ed. sec. 509), says: "The uses and purposes of a public square or commons are, in some respects, different from those of a public highway. Thus, a street or highway cannot be enclosed by the local authorities. But a public square or common in a town or city where the dedication is general, and without special limitation or use, may be. enclosed, notwithstanding it has remained open many years, and be improved and ornamented for recreation and health. But the place must, for the purpose of the dedication, remain free and common to the use of all the public." (See also *Lee* v. *Town of Mound Station,* 118 Ill. 304; *Village of Princeville* v. *Auten,* 77 id. 325; *City of Jacksonville* v. *Jacksonville Railway Co.* 67 id. 540; *City of Alton* v. *Illinois Transportation Co.* 12 id. 38). *Langley* v. *Gallipolis, supra,* is a case, similar in its facts to the case at bar; and it was there said: "This is a bill in chancery to enjoin the corporate authorities of the village of Gallipolis from enclosing the 'public place,' or 'public square,' of the village, for the purposes of

improvement and ornament. This public ground, as it appears, never had been previously enclosed, but had been used for over fifty years as an open public common, and to some extent as a public highway for the passage of carts, drays, teams, etc. The complainant, who is a dealer in merchandise, produce, etc., owns and occupies a lot with valuable improvements thereon, fronting upon this public place. And he avers that the proposed enclosure of this ground will greatly damage him in the value of his property, and also in his business, by preventing teams, carts, etc., from taking the nearest route in going to and from his place of business to the public landing on the river, and compelling them to pass round by the streets; also by obstructing the use of his place for horse-racks, the placing of articles, and the convenient accommodation of teams," etc.; and it was there held that the place or square in question was subject to be controlled and improved by the public authorities of the village for the proper use and purpose, to which the public squares of towns and cities are usually appropriated. The bill in the case at bar alleges that appellee owns all of block 51 except lot 8, as shown on the plat of the addition, and also lots 64 and 33 and the twenty foot strip off of the south side of lots 63 and 34 in block 48 in the original town; that he rents a store on lot 64 of block 48 to a tenant who carries on business there, and that he lives on block 51; that the store is on the corner of Union and Madison streets fronting on Union street; that, by reason of the building and constructing of the fence around the public square, appellee's property is greatly injured and deteriorated, because persons are compelled to travel in some cases with teams at least three blocks, whereas they could have gone to the store by passing along Union street across the public square one block.

Whether or not Union street crosses the square depends upon the question, whether it was the intention of

the original proprietors or dedicators of the addition to Middletown, that it should so cross the public square. In *Maywood Co.* v. *Village of Maywood*, 118 Ill. 61, we said (p. 69): "A dedication may be made by grant, or other written instrument, or it may be evidenced by acts and declarations without writing. No particular form is requisite to the validity of a dedication. It is purely a question of intention. A dedication may be made by a survey and plat alone, without any declaration, either oral or on the plat, when it is evident from the face of the plat, that it was the intention of the proprietor, to set apart certain grounds for the use of the public." (*City of Jacksonville* v. *Jacksonville Railway Co. supra; Village of Princeville* v. *Auten, supra; City of Chicago* v. *Drexel*, 141 Ill. 89). In ascertaining the intention of the dedicator or donor from the face of a plat made and recorded by him, the whole instrument must be taken into consideration. "The extent of a dedication by map or plat is, however, to be determined from a consideration of the whole instrument, since the chief object is to ascertain the intention of the donor." (Elliott on Roads and Streets,—2d ed.—sec. 119, and cases cited in note 5).

Upon examination of the plat of the original town of Middletown, and the plat of the addition to Middletown, and of the two plats as related to each other, we are satisfied that it was never the intention of the original proprietors, that Union street should run through the public square. The space upon the plat, marked "Public Square," is indicated as extending from Sixth street on the north to Fourth street on the south, and is designated on the plat as one piece of ground, and not as two blocks. No lines are drawn across the center of the space, marked "Public Square," to indicate that Union street was intended to cross the square. Union street, west of the square, is bounded by lines on the north and the south, and Union street east of the square is bounded by lines on the north and on the south, but there are

no such lines to indicate that Union street was to be extended across the square. Upon the trial below, the appellee introduced in evidence a plat of the addition to Middletown, upon the face of which the word, "Street," east of the word, "Union," is written across the face of the space, designated as "Public Square." But the proof shows clearly that the copy, thus introduced by appellee, was incorrect. Upon the correct copy of the plat of the addition, "Street" is written north of block 51 and entirely to the east of the east side of the square, no part of the word touching upon the space, marked "Public Square." The words themselves, "Public Square," extend from north to south across the whole of the space, so marked.

It is to be noted that, on the copy of the plat of the addition to Middletown, there are no blocks numbered 31, 32, 39, 40, 41, 42, 48 and 49. It was evidently the intention of the proprietors, who laid out the addition to the original town, that the blocks in the original town should correspond with those numbers, which are thus omitted from the plat of the addition. This is substantially conceded by the appellee, because in his bill, and in his testimony, he describes himself as being the owner of lots 64 and 33 in block 48 in the original town. In other words, the appellee describes the block, where his store is located, and which contains lots from 33 to 36 inclusive, and from 61 to 64 inclusive, as block 48. The block, immediately east of block 48 and containing lots from 1 to 4, inclusive, and from 29 to 32, inclusive, is block 49. The plat of the addition was evidently made out by two sets of proprietors. In the certificate of acknowledgment the agent of Casey, Hankinson and Allen acknowledged the plat as numbered to 49, and Knapp and Glenn acknowledged the plat as numbered from block 50 inclusive. When we examine the plat of the original town of Middletown, we find that a line is drawn upon the west side of the street, designated as Madison

street, and upon that part of the west side of Madison street which lies opposite block 48. This shows that Madison street, extended, was intended to run along on the east side of the space, marked "Public Square," and that Madison street was not intended to be included in and as a part of the public square. There is nothing upon the face of the plat to indicate that Sixth street extended to the east beyond Clinton street, or Fourth street extended to the east beyond Clinton street, or Clinton street extended to the south beyond Sixth street, or Madison street extended to the south beyond Sixth street, were intended to be included within the space, marked "Public Square." Indeed, the bill itself alleges that the square is between Madison and Clinton streets on the east and west, and between Sixth and Fourth streets on the north and south. The lots fronting east and west are all laid out to front on the public square, and the lots fronting north and south are laid out to front on the public square. It is conceded by counsel for appellee in their brief that the space, marked "Public Square," is only about four hundred and eighty feet long and one hundred and sixty feet wide, thereby making a very small park or public square; and it is impossible to believe that the dedicators of the space for a public square, who made the plat in question, intended that this small space should be divided into two parts by running a street through the middle of it.

There is nothing in the note to the plat, or in the certificates attached thereto, which contradicts the showing made by the face of the plat. The face of the plat shows that it was the intention of the original dedicators not to run Union street across the public square, and the showing of the plat in this regard is confirmed by the note and certificates. For instance, the surveyor's note to the plat contains these words: "The lots are all 60 feet front with 120 feet depth except those fronting the public square from the north and south, which are but

one hundred feet depth and forty feet front." The lots are here described as fronting "the public square," and not as fronting two public squares. The expression, "public square," indicates that the whole of the space, marked "Public Square," was to be one piece of ground, and not two pieces of ground, cut in two by a street running through it. Again, in the certificate of acknowledgment by Knapp and Glenn it is said that they "voluntarily relinquished their title and interest to the streets, square and alleys." Here, the space, marked "Public Square," is designated as a "square," not as two squares.

The note of the surveyor to the plat uses these words, "All of the cross-streets except Second, Third, Fourth, Union and Main cross-streets are 40 feet wide and run east and west crossing the others at right angles." Counsel for appellee say that, by these words, Union street is described as one of the streets, which cross the other streets at right angles, that is, that Union street crosses the streets, running north and south, at right angles, and that it could not cross Clinton and Madison streets at right angles without extending across the park or public square. In the first place, the language quoted does not state that Union street is forty feet wide, or that it runs east and west, or that it crosses the other streets at right angles. On the contrary, Union street comes within the exception in the sentence quoted. The statement is, that all of the cross-streets, except Union street and four others named, are forty feet wide, and run east and west, crossing the others at right angles. The streets, which are forty feet wide and run east and west, crossing the others at right angles, are all of the cross-streets, except Union street and four others. In other words, the nominative case to the verb, "run," is "all of the cross-streets except" Union street, etc., and not all of the cross-streets including Union street. The word, "crossing," qualifies the words "all of the cross-streets except" Union street and the other four streets

201—19

named. But this expression, used in the note of the surveyor, is merely to indicate the general direction of the cross-streets as running east and west, and to designate their width. There is nothing in the expression used to indicate that Union street was intended to cross the public square. The proof shows that Union street was properly excepted so far as its width is concerned, because one witness testifies that Union street is fifty feet wide, and not forty feet wide. In a certain sense, however, Union street may be said to cross Clinton and Madison streets at right angles, even if it extend no further than the east side of Clinton street running along the west side of the public square, and the west side of Madison street running along the east side of the square.

In our view, the face of the plat shows that the intention of the dedicators was that Union street should not cross the public square and divide it into two parts; and there is nothing in the statements made in the surveyor's note or certificates, or in the certificates of acknowledgment, to contradict the showing made by the face of the plat.

If, however, it were true that Union street is a street, which crosses the public square, then its enclosure by the board of trustees was a public nuisance. It is well settled that a public nuisance will not be restrained at the suit of a private person, unless such person suffers therefrom a special and particular injury distinct from that suffered by him in common with the public at large. In the American and English Encyclopedia of Law, (vol. 10—1st ed.—p. 838) it is said: "Where the nuisance is public, the plaintiff, to obtain an injunction, must allege in his bill, and prove if need be, special damages peculiar to himself distinct from the public at large." In *McDonald* v. *English,* 85 Ill. 232, we said (p. 236): "We regard the rule as well settled, that for any obstruction to streets, not resulting in special injury to the individual, the public, only, can complain. Where, however, the

obstruction is such that a public prosecution is author-
ized, and, at the same time, an individual has been spe-
cially injured thereby, as well as where the act has been
private and an offense against the individual, solely, he
may maintain an action and recover for his special in-
jury." (*City of Chicago* v. *Union Building Ass.* 102 Ill. 379;
*City of East St. Louis* v. *O'Flynn,* 119 id. 200; *Smith* v. *Mc-
Dowell,* 148 id. 51; *Pittsburg, Fort Wayne and Chicago Rail-
way Co.* v. *Cheevers,* 149 id. 430; *Chicago General Railway Co.*
v. *Chicago, Burlington and Quincy Railroad Co.* 181 id. 605).

In the present case, the appellee does not show any
particular injury to his property, distinct and separate
from the injury, which would be suffered by the public
at large, in case the whole public square here in ques-
tion were enclosed. If the whole of the public square be
enclosed, then, assuming that Union street was intended
to cross the square, the obstruction, caused by the board
of trustees to, the public street embraced within the pub-
lic square, would be an obstruction occurring in a differ-
ent and separate block from either of the blocks, where
the property of appellee is located. He cannot be injuri-
ously affected by the closing of a street, not adjacent to
his property, nor directly affording access thereto and
egress therefrom. Appellee's property is not adjacent to
such part of Union street, as might be embraced within
the public square. No part of Union street adjacent to
the property of appellee is in any manner encroached
upon by the alleged closing of Union street. The mere
inconvenience, that would be occasioned to appellee in
going from the street in front of his house or store to a
particular part of the city on account of the closing up of
the public square, is the same kind of damage that would
be sustained by all other persons in the city that might
have occasion to go that way. (*City of East St. Louis*
v. *O'Flynn, supra*). In the latter case we said (p. 206):
"Here, plaintiff's lot is not adjacent to the streets or
alleys vacated. It is in another block. The access to

and egress from his lot are not affected by the vacating ordinance passed by the city. The street in front and the alley in the rear of his property remain open as before, affording the same access to and egress from it. The inconvenience, that would be occasioned to plaintiff in going from the street in front of his house to a particular part of the city on account of vacating and closing up certain streets and alleys in another block, is the 'same kind' of damage that would be sustained by all other persons in the city that might have occasion to go that way."

Therefore, even if the board of trustees had been guilty of obstructing a public highway by enclosing the whole of this public square, appellee was not entitled to an injunction, because he suffered no special or particular injury from the public nuisance thereby created.

We are of the opinion, that the court below erred in granting the injunction, and in making the same perpetual by its final decree. The decree of the circuit court is reversed, and the cause is remanded to that court with directions to dismiss the bill.

*Reversed and remanded, with directions.*