## C. Hacker Company, Appellant, v. City of Joliet et al., Appellees.

### Gen. No. 6,129.

1. STIPULATIONS, § 16*—*when stipulation construed as providing for final judgment whether injury to land by vacation of street actionable.* In an action to recover compensation for depreciation in the value of land due to the vacation of part of a street in the neighborhood, where after testimony had been introduced as to the amount of such depreciation parties agreed that the court should determine first whether plaintiff could recover on the evidence introduced, and, if the court so held, further evidence of depreciation

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

should be introduced, and if not, plaintiff would appeal, *held* that the intention of parties in making the agreement was to obtain a final judgment whether the injuries complained of were actionable.

**2.** MUNICIPAL CORPORATIONS, § 450*—*when opinion evidence as to depreciation in value of land due to vacation of street inadmissible.* In an action to recover compensation for depreciation in the value of land as the result of the vacation of part of a street in the neighborhood, opinion evidence as to such depreciation is incompetent until the question as to liability for the injury causing the depreciation has been determined.

**3.** TRIAL, § 195*—*when verdict improperly directed.* Where plaintiff has a right of action to recover compensation for depreciation in the value of his land due to the vacation of part of a street in the neighborhood, it is error to direct a verdict for defendant if there is any evidence of a pecuniary loss as a result of such vacation, whether such loss be great or small.

**4.** MUNICIPAL CORPORATIONS, § 450*—*when evidence sufficient to show decrease in traffic after vacation of part of street.* In an action to recover compensation for depreciation in the value of plaintiff's land as a result of the vacation part of a street in the neighborhood, evidence *held* to show that the amount of traffic by vehicles past plaintiff's property had been materially decreased as a result of such vacation.

**5.** WORDS AND PHRASES—*market value of urban property.* The market value of urban property depends much upon the amount of travel past such premises, and is therefore increased or decreased by considerations affecting such travel, such as the location of other properties of public improvements, and the improvement or non-improvement of the streets leading to or past such property.

**6.** MUNICIPAL CORPORATIONS, § 424*—*when abutting property owner no right to damages for vacation of street.* Generally an owner of property abutting a public street has no right of action because of the vacation of a street at some distance from his property, or because of the suspension or removal of some business, public or private, which drew travel in the direction of such property, although the value thereof is lessened thereby.

**7.** MUNICIPAL CORPORATIONS, § 424*—*when abutting property owner not entitled to damages for vacation of street.* Owners of land abutting a public street are not entitled to damages by reason of the vacation or discontinuance of a neighboring or other street, or of the same street when the point where the street is vacated or discontinued is beyond the cross street next after the location of such owner's land, although its value may be lessened by such vacation or discontinuance.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

C. Hacker Co. v. City of Joliet et al., 196 Ill. App. 415.

8. ACTION, § 5*—*when private individual no right of action for act obstructing a public right.* No private action will lie for any act obstructing a public and common right where the damages sustained thereby are of the same *kind* as those sustained by the general public, although such injury has a much greater effect on the value of the property of the owner seeking compensation than on the value of property of other owners.

9. ACTION, § 25*—*what individual must prove to entitle him to redress for interference with common public right.* An owner of a house must be compensated for a physical interference with a right which the owner is by law entitled to use in connection with the house except where the right interferred with is one which is possessed in common with the public, in which case to entitle him to compensation the owner must show that the connection of the right with the house is peculiar in some way and sufficient to distinguish his use of the right from the use enjoyed by the public.

10. WORDS AND PHRASES—*access.* The courts use the words "ingress" and "egress" interchangeably with the word "access."

11. MUNICIPAL CORPORATIONS, § 423*—*when right of access to property abutting street may not be interfered with.* The right of an owner of property abutting a public street to access thereto, from or by way of such street, and his right of ingress and egress to and from such street cannot be interfered with by the construction of a public improvement without compensation.

12. MUNICIPAL CORPORATIONS, § 423*—*what is nature of right to access to property abutting street.* Owners of property abutting a public street have, as an incident to such ownership, a right of access by way of the streets.

13. MUNICIPAL CORPORATIONS, §·423*—*what constitutes access to real estate from street.* It is difficult to define exactly the meaning of the word "access" as used with reference to real estate abutting a street, its meaning not being confined to the exact point where such real estate abuts upon such street, and being not capable of being so extended as to make an interference with or obstruction of the use of such street at a point two or three blocks away from such land an interference with or obstruction of such access, unless it appears that such owner is specially and particularly injured thereby.

14. MUNICIPAL CORPORATIONS, § 424*—*when inconvenience in reaching a street formerly accessible from partly vacated street common to all using street.* Where the vacation of part of a street on which · an owner's property abuts compels persons passing from such owner's property to go considerably further to reach a street formerly accessible directly from the street vacated, the inconvenience sustained

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Vol. CXCVI 27.

thereby is one which results to all wherever located who have occasion to use that route.

15. MUNICIPAL CORPORATIONS, § 424*—*when immaterial that damage sustained by abutting property owner from vacation of street greater than that of others.* There is no significance in the fact that an owner of property abutting a public street sustains damage in the depreciation of the value of such property by reason of the vacation of part of such street "in excess" of that sustained by other owners similarly situated if the damage sustained by such owner is of the same kind as that sustained by such other owners.

16. MUNICIPAL CORPORATIONS, § 424*—*when closing of street injury to abutting property owner distinct from public injury.* The closing of a street, whereby the street is converted into a blind court in front of the premises of an abutting owner, is an injury distinct from that suffered by the general public.

17. MUNICIPAL CORPORATIONS, § 424*—*when closing of street damnum absque injuria.* Damage sustained by an owner of property abutting a public street as a result of the vacation of a street or alley is *damnum absque injuria* and gives no right of action where the damage sustained is of the same kind and character as that sustained by the general public, differing therefrom only in degree.

18. MUNICIPAL CORPORATIONS, § 424*—*when abutting property owner not entitled to damages for vacation of part of street.* In an action to recover compensation for depreciation in the value of land owing to the vacation of part of the street which plaintiff's land abutted, *held* that plaintiff had no cause of action where it appeared that after such vacation plaintiff still had unobstructed access to his property from one end of such street, and that as to the other end, such access was only partially obstructed, pedestrians being able to pass along the street without obstruction, and vehicles being compelled merely to travel several blocks further in order to reach those parts of the city which before such vacation might be reached directly by such street.

19. MUNICIPAL CORPORATIONS, § 424*—*when depreciation in value of land abutting partly vacated street due to proper operation of railroad.* In an action to recover compensation for depreciation in the value of land due to the vacation of part of a street which the land abutted, such vacation being the result of an elevation of an existing railroad right of way in obedience to a municipal ordinance, and also by reason of the fact that after such tracks were elevated the trains of another railroad company were operated on such right of way, *held* that the depreciation complained of arose solely from the legitimate and proper operation of the railroad, although there was an increase of noise, dust and confusion, and although plain-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

C. Hacker Co. v. City of Joliet et al., 196 Ill. App. 415.

tiff's light and air were appreciably obstructed by the construction of the embankment, it appearing that there was no physical interference with the *corpus* of plaintiff's property.

20. MUNICIPAL CORPORATIONS, § 421*—*when owners of city property not entitled to recover for decreased value due to legitimate use of other property.* The market values of all urban properties are subject to the increase and decrease due to legitimate uses which adjacent owners may make of their lands, and the owners of such urban properties are only required to pay for increased values and are not allowed to recover for decreased values as a result of such uses.

21. MUNICIPAL CORPORATIONS, § 450*—*when person purchasing property adjacent to railroad tracks presumed to purchase subject to legitimate use of right of way.* One who purchases property adjacent to an existing railroad track, and conducts on such property a manufacturing business to which the advantage of being near such a track is absolutely necessary, is presumed to have so purchased with a view to such advantages and to the disadvantages which may arise in the legitimate use of the right of way for railroad purposes.

Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1915. Affirmed. Opinion filed November 5, 1915.

E. MEERS and J. W. D'ARCY, for appellant.

FRANK J. WISE, SNAPP, HEISE & SNAPP and O'DONNELL, DONOVAN & BRAY, for appellees.

MR. JUSTICE CARNES delivered the opinion of the court.

C. Hacker Company, the appellant, owned for many years prior to 1911 a manufacturing plant in the City of Joliet fronting westerly and abutting eighty feet on Collins street, and extending easterly along the right of way of the Michigan Central Railroad Company on the south about three hundred feet. It acquired its title after the purchase and occupancy by the railroad company of its adjacent right of way, and from the same source. In 1911 the railroad company, in elevating its tracks pursuant to an ordinance of the City of Joliet requiring such elevation, permanently closed

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Collins street to travel by vehicles at a point about thirty feet south of appellant's property where a subway fifteen feet wide for foot passengers only was constructed in the place of the grade crossing of the Michigan Central Railroad Company that had before been at that place. The Chicago, Rock Island & Pacific. Railway Company, after the elevation of the tracks, operated its trains on the right of way of the Michigan Central Company adjacent to appellant's premises and across Collins street. The result of this changed condition was to increase the traffic on the Michigan Central right of way adjoining appellant's premises, and because thereof, and perhaps also because of the elevation of the tracks, to increase noise, dust, soot, cinders, odors, smoke and vibration occasioned by the operation of the road. The raising of the embankment south of appellant's premises to some extent obstructed the view therefrom. This action was brought against the City of Joliet and the two companies to recover for the alleged injuries occasioned by the improvement. The principal claim is that the closing of Collins street to travel by vehicles has interfered with appellant's ingress to and egress from its premises.

To a declaration setting out the facts above stated, appellees pleaded the general issue. On a jury trial appellant introduced evidence of what had been done, and of the opinions of witnesses that the market value of appellant's premises had been much diminished thereby. Then it was agreed by counsel that the court should determine whether there was any basis for recovery on the evidence so far introduced. If he should hold there was, then further testimony should be introduced. If he held there was not, then the plaintiff would appeal. Each of the appellees moved the court to exclude all evidence (specified in some detail) upon which a verdict could be based, apparently upon the theory that none of the injuries which the evidence tended to prove gave appellant a cause of action. Ap-

pellees also moved the court to strike out the opinion evidence of witnesses as to the depreciation of the market value of appellant's premises on the theory that the examination of the witnesses showed that their estimate of damages was based, in part at least, on elements that could not be properly considered. The court sustained all these motions and granted further motions by appellees to direct a verdict of not guilty. Judgment on the verdict followed, from which this appeal is prosecuted.

The intention of the parties and the trial court was to obtain a final judgment as to which, if any, of the injuries complained of are actionable. Until that question is settled, opinions of witnesses cannot be obtained as to depreciation in market value from injuries that give a legal cause of complaint. We are inclined to hold that if appellant has a cause of action for any injury resulting from the change in Collins street there was evidence tending to show a pecuniary loss from that cause alone, and, if so, the court erred in directing a verdict for the defendants, and it is immaterial on that question whether the injury was great or small.

Collins street, as platted and used before the time in question, entered Washington street about one hundred feet south of appellant's property. Washington street runs in an east and west direction, and Jefferson street, running in a southeasterly direction, enters it at the same point. The Michigan Central right of way extends east and west past this point of intersection of said three streets. One hundred and fifty feet north of the north line of appellant's property on Collins street is the south line of Van Buren street, which runs parallel with Jefferson street. Prior to the passage of the traffic elevation ordinance the right of way of the Rock Island Company paralleled the right of way of the Michigan Central Company, and was about two blocks north of it on Collins street. The Rock

Island Company abandoned the use of that right of way on Collins street and operated its trains, as before stated, over the elevated right of way of the Michigan Central Company. Formerly the direct access to appellant's factory was, as now, from Collins street only, leading north connecting with Van Buren street and south connecting with Jefferson and Washington streets. Access from the north is in no way disturbed. The elevation of the tracks narrowed Jefferson street to a width of thirty feet where it connects with Collins street, but that space allows free passage of vehicles so that there is no material interruption of travel from Collins street south to and on Jefferson street. But the change in Collins street requires vehicles from south of the improvement to go about two blocks further to reach appellant's property than was before necessary. The territory south of this point of interruption on Collins street is thickly populated, and the evidence shows that this change of route for vehicles approaching from the south has materially decreased traffic by vehicles past appellant's property on Collins street. The market value of urban business properties much depends upon the amount of travel by the premises. The location of other properties or public improvements, the improvement or nonimprovement of streets leading to and by a property, each and all tend to increase or decrease travel and thereby increase or decrease the desirability and market value of premises. As a rule the owner of property abutting on a public street has no legal ground for complaint if travel is diverted from his premises because of the vacation of a street at some distance therefrom, or because of the suspension or removal of some business, public or private, that drew travel in his direction. Our Supreme Court in *Illinois Malleable Iron Co. v. Lincoln Park Com'rs*, 263 Ill. 446, quotes with approval from Elliott on Roads and Streets (vol. 2, 3rd Ed., sec. 1181) as follows: "Owners of land abutting upon neighboring

streets, or upon other parts of the same street, at least when beyond the next cross-street, are not, however, entitled to damages, notwithstanding the value of their lands may be lessened by its vacation or discontinuance.''

In *City of Chicago v. Union Building Ass'n,* 102 Ill. 379, on page 393, the court quotes with approval from American Law Register as follows: ''For any act obstructing a public and common right, no private action will lie for damages of the same *kind* as those sustained by the general public, although in a much greater degree than any other person;'' and again quotes from *McCarthy v. Metropolitan Board of Works,* L. R. 7 C. P. 508, to the effect that there arises a claim of compensation for a physical interference with a right which an owner of a house is entitled by law to make use of in connection with the house, unless the right is one which the owner possesses in common with the public, in which case there must be something peculiar to the right in its connection with the house to distinguish it from that which is enjoyed by the rest of the world. Appellees' counsel undertake to distinguish between interference with access and interference with ingress and egress, but the courts use the terms interchangeably, and it is true that municipal authorities in making authorized improvements in streets cannot, without compensation, interfere with a property owner's access to his property from or by way of the street, or with his ingress and egress from and to the street. It is said in *Illinois Malleable Iron Co. v. Lincoln Park Com'rs, supra,* on page 451, citing several Illinois cases, that: ''Owners of property bordering upon a street have, as an incident of their ownership, a right of access by way of the streets which cannot be taken away or materially impaired without compensation.''

The difficulty lies in exactly defining this right of access. That it cannot be confined to the immediate

access from the street on which the premises abut is clear on the authority of *Rigney v. City of Chicago,* 102 Ill. 64, where an injury from constructing a viaduct along Halsted street and across Kinzie street in Chicago, about 220 feet west of the property owner's premises fronting on Kinzie street, cutting off communication with Halsted street by way of Kinzie street, was held to give a right of action. That it cannot be extended to interference with an abutting owner's access to his property by vacating or obstructing a street two or three blocks away is equally clear from the authority of *City of Chicago v. Union Building Ass'n, supra,* which case was decided at the same term of court, and in which it was held that the closing of LaSalle street in Chicago by the Board of Trade building, three and a half blocks from the owner's abutting property, did not give a right of action because the owner was not specifically or particularly injured, and while it was true that persons passing from the owner's property to Washington street to VanBuren street or to the depot to the south would have to go further than they otherwise would, that it was the same kind of injury that will result to every one wherever located having to pass that route. It is said in that case that it must appear that the owner "has sustained a special damage with respect to his property in excess of that sustained by the public generally." A similar use of the word "excess" is found in other cases, and has given rise to contention that a right of action may be based alone on the proposition that the plaintiff's damages exceed those of others and the general public. But there is no significance in the fact of excess of damages if they are of the same kind as those sustained by the general public. This is made clear by the court in *Village of Winnetka v. Clifford,* 201 Ill. 475, where earlier authorities are cited; but that case holds on the authority of the *Rigney* case, *supra,* that the closing of a street, turning it into a blind court in front of the

abutting owner's property, is an injury distinct from that suffered by the public. *City of East St. Louis v. O'Flynn,* 119 Ill. 200; *Parker v. Catholic Bishop of Chicago,* 146 Ill. 158; *Guttery v. Glenn,* 201 Ill. 275; and *Saunders v. City of Chicago,* 212 Ill. 206, are among other cases illustrating the rule that damage sustained by an abutting property owner, from the vacation of a street or alley, of the same kind and character sustained by the general public, differing only in degree, gives no right of action. It is *damnum absque injuria.* If there had been an obstruction south of appellant's property, turning Collins street in front of appellant's premises into a blind court and cutting off access from the south, appellant would have thereby sustained an injury of different kind from that sustained by the public under the authority of the *Rigney* case, *supra.* If the obstruction had been 100 feet further south, leaving appellant uninterrupted egress at the south from Collins street to Washington street, as well as Jefferson street, it would have no right of action under the authority of the *Union Building Ass'n* case, *supra,* and later cases above cited, although the change in the street might have very materially lessened travel on Collins street passing appellant's premises. Collins street is not turned into a blind court. Appellant still has free access not only to and from the street abutting its property and to the north, but also from that street directly south for foot passengers and directly south for vehicles excepting they must travel about two blocks further than heretofore. The inconvenience suffered by appellant in being compelled to travel this additional distance to reach that part of the city lying south of the improvement is of the same kind and character that is suffered by all people who desire to travel with vehicles in that direction, differing only in degree. The injury falls within the rule announced in the *Union Building Ass'n* case, *supra,* and not within the rule announced in the *Rigney* case,

*supra,* and therefore though the market value of appellant's property may have been diminished by the change in Collins street, no legal cause of action accrued therefrom.

We are of the opinion that the injuries complained of other than the obstruction of Collins street arise solely and only from the legitimate and proper operation of the railroads on the right of way adjacent to appellant's premises. There is no physical interference with the *corpus* of appellant's property. Light and air may be appreciably obstructed by the raising of the embankment as it would have been by the erection of a building on the land had it been owned by a private owner, and there may be an increase in noise and dust and confusion as there might be from a legitimate business of a private owner on adjacent premises. There may be a decrease in market value of appellant's premises because of the use that the railroad company is making of its premises. All urban properties are subject to increase and decrease in market value because of uses legitimately made by other nearby owners of their land. They are only required to pay for increased value and not permitted to recover for decreased value so occasioned. Appellant acquired its property after the railroad company acquired and devoted to railroad purposes its right of way. Appellant no doubt purchased its property so located because of certain advantages arising from its proximity to the railroad, advantages absolutely necessary to the conduct of a manufacturing business. It must be presumed to have acquired its property with a view not only to those advantages but also to all disadvantages that might arise in the legitimate use of the right of way for railroad purposes. It had before the improvement a connection by means of a switch track with the railroad, and it is not claimed that this connection has been materially changed or disturbed by the improvement. We hold on the authority of *Galt v. Chicago &*

*N. W. Ry. Co.*, 157 Ill. 125, and *Chicago & E. I. R. Co. v. Loeb*, 118 Ill. 203, and authorities in those cases cited and discussed, that appellant has no legal grounds for complaint because of anything proven in regard to the operation of the road.

The trial court, therefore, did not err in directing a judgment of not guilty, and the judgment is affirmed.

*Affirmed.*