Rose I. Davis, Appellee, v. City of Chicago, Appellant.

Gen. No. 39,387.

Opinion filed May 10, 1937.

BARNET HODES, Corporation Counsel, for appellant;
JOSEPH F. GROSSMAN, First Assistant Corporation
Counsel, OTHO S. FASIG, NORMAN N. EIGER, ALEXANDER
J. RESA and JOHN W. McCARTHY, Assistant Corpora-
tion Counsel, of counsel.

HARRY P. BEAM, of Chicago, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opin-
ion of the court.

In an action on the case by plaintiff, the owner of
real estate, for damages alleged to have been caused by
the vacation of parts of two city streets, and upon
trial by jury there was a verdict for plaintiff in the
sum of $43,588, upon which judgment was entered.
The city contends for reversal that an instruction for
defendant requested at the close of all the evidence
should have been given, and that the court erred in
allowing evidence to be given over the objection of
defendant.

A plat of the property appears in the record show-
ing its situation with reference to the streets before

and after the vacation ordinances. A copy of this plat is hereinafter shown. It appears therefrom that the

PLAINTIFFS PROPERTY
BEFORE STREET VACATION

PLAINTIFFS PROPERTY AFTER STREET VACATION

premises said to have been damaged consisted of two lots adjacent to each other and immediately north of the Chicago River, which formed the southern boundary thereof. The northern boundary of the lots was Carroll avenue, a public street extending. east and west, on which these lots had a frontage of 160 feet. The east boundary was Orleans street, a public highway extending north and south, on which the frontage of these lots was 230.5 feet. The western boundary extended from Carroll avenue south to the river, a distance of 325 feet, forming the boundary line between plaintiff's premises and those of the Northwestern Railroad Company. The irregular frontage on the Chicago River extended 190 feet.

Carroll avenue ran from Orleans street west to the north branch of the Chicago river, where there is an outlet in Ferry street, which runs north from Carroll avenue directly to Kinzie street, another public highway extending east and west parallel with Carroll avenue. Ferry street intersected Kinzie street at the Kinzie street bridge, where the dock facilities and water transportation of the river were available. Carroll avenue was paved about 40 feet wide. Ferry street has a pavement 30 feet in width. Orleans street was paved and was about 80 feet wide. The total area of the property is 46,370 square feet. The evidence shows that the best use, prior to the vacation of the streets, to which this property might be devoted was for storage, warehouse and manufacturing purposes. Before the vacation of these parts of the streets of which complaint is made, trucks and teams reached this property principally through Orleans street, north into Kinzie, through a by-pass east of the Franklin-Orleans street bridge ramp; thence, north in Austin avenue to Division street jogging left to Sedgwick street, continuing to the north. Also the traffic passing by the premises would flow east and west through

Kinzie street which was convenient on the east to all the bridge heads, the Clark street, Wells street, La-Salle, Dearborn and State street bridges.

At the intersection of Kinzie and Orleans streets, one block-north of plaintiff's premises, were through streets going in all directions to all parts of the city, including Kinzie street itself. To the west side of Chicago traffic went over the Kinzie bridge; to the south side over the Franklin-Orleans bridge. By the vacation ordinances Carroll avenue east of the east line of Orleans street and Orleans street for one block north of the north line of Carroll avenue were closed. The effect of the vacation of these streets was that the only way to reach plaintiff's property was to drive south on Ferry street to Carroll avenue, then east on Carroll avenue to the premises. The only way out from plaintiff's premises was by returning over the same route; that is, going west on Carroll avenue, then north on Ferry street to Kinzie street. Plaintiff's property being located, so to speak, at the lower point of the peninsula formed by the course of the river, Ferry, Carroll and Orleans, after the passage of the vacation ordinances, formed a cul-de-sac in which the premises of plaintiff were placed. Thus it became necessary for any one desiring to go to plaintiff's property to locate Ferry street; get off the heavily traveled thoroughfare of Kinzie street (not at an intersection) by jutting off into Ferry street which enters at the east end of the Kinzie bridge, travel south on its narrow 30-foot pavement to Carroll avenue, and then turn and go east in Carroll avenue until plaintiff's property is reached. The same person wishing to leave plaintiff's property will then have to turn his automobile or truck around in the middle of the road and proceed back over the same route traversed to get into the property. One of plaintiff's witnesses describing plaintiff's property after the vacation of the streets, said it was "almost at the bottom of a pocket."

Defendant does not contend plaintiff's property was not in fact damaged as a result of closing these portions of these streets. The evidence shows that plaintiff purchased the property in 1927, paying therefor $12.16 a square foot or a total sum of $560,000. Two of the three expert witnesses for plaintiff estimated plaintiff's damages at $162,295. One of them placed the damage at $185,480. Three experts for the city estimated plaintiff's damages at $23,185, $27,000 and $27,822, respectively. The jury assessed the damages at $43,558.

Defendant contends that whatever damage plaintiff may have sustained was not special damage such as would justify a recovery, but merely damage of the same kind as that suffered by the public, and it is contended therefore that plaintiff as a matter of law was not entitled to recover, and that an instruction for defendant as requested should have been given. It has been held in many cases that a property owner who suffers damages by reason of the vacation of a public street is not entitled to recover at all unless his damages are different *in kind* and not merely *in degree* from that suffered by the general public.

The right to recover damages in an action of this character is based on Article 2, section 13 of the Constitution of Illinois, which in substance provides that private property shall not be taken or damaged for public use without just compensation. The words, "or damaged" inserted in the Constitution of 1870, were not found in prior constitutions of this State. In conformity with that provision the statute provides:

"When property is damaged by the vacation or closing of any street or alley, the same shall be ascertained and paid as provided by law." (Ill. State Bar Stats. 1935, ch. 145, ¶ 1, p. 3112; Jones Ill. Stats. Ann. 21.685.)

Prior to the adoption of the present constitution it had been held by the courts that in order to recover

in such cases it was necessary to show some direct physical disturbance of a right, either public or private, which plaintiff enjoyed in connection with his property in excess of that sustained by the public generally. The first construction of this provision of the new constitution was in *Rigney v. City of Chicago,* 102 Ill. 64. The opinion was by a divided court. In that case the property was located on the south side of Kinzie street about 220 feet east of its intersection with Halsted street. The city raised the level of Halsted street so that Kinzie ran under the elevated street and vehicles could not turn north or south from Kinzie into Halsted after the improvement had been completed, as they had been accustomed theretofore to do. A judgment for defendant was reversed and a new trial ordered. The court said:

"The gravamen of the plaintiff's complaint is, that the defendant, in cutting off his communication with Halsted street by way of Kinzie street has deprived him of a public right which he enjoyed in connection with his premises, and thereby inflicted upon him an injury in excess of that shared by him with the public generally, and it is for this excess he seeks to recover, and nothing more. . . . In all cases, to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally."

In that case the property held to be damaged was located 220 feet distant from the vacated street. In the case at bar plaintiff's property immediately adjoins the vacated streets, being separated therefrom only by the width of the streets themselves. Plaintiff points out that in the *Rigney* case the traffic on Kinzie

street continued east and west under the elevation of Halsted street without being blocked in any respect and there remained full accessibility in other directions to the general street system of the city. The substance of the damage inflicted was that plaintiff lost the right to turn north or south into Halsted street at a point 220 feet distant from his premises.

In the later case of *City of Chicago v. Burcky,* 158 Ill. 103, the defendant requested an instruction to the effect that as the property claimed to be damaged did not abut upon that portion of the street vacated but was situated in another block east of the block in which the portion of 61st street was situated, plaintiff had failed to prove damage. Plaintiff obtained judgment, and refusal of this instruction was urged as error upon appeal. That judgment was, however, affirmed. The court after reviewing authorities said:

"There is less difficulty in determining what the law is, than in making a proper application of the law to the different cases that may arise. In this case we think it plain that plaintiff was entitled to recover. Her property fronted on Sixty-first street. It extended west to and cornered with that part of the street which was vacated. By the vacation of the street and the erection of the viaduct her property, extending from the railroad tracks east to State street, was shut in, and all access from the south and the west was shut off. What was originally a thoroughfare along the entire line of plaintiff's property fronting on Sixty-first street, was by the action of the town turned into a blind court. No other property was damaged or affected in the same way, except the small tract lying between Wentworth avenue and the railroad tracks. The property of the general public was not affected like plaintiff's, nor was the damage sustained by the public of the same kind. Before the action taken by the town, plaintiff's property fronting on Sixty-first street

was so situated that it was available as lots for business purposes, but after the action of the town it was rendered useless for that purpose.''

In *City of Chicago v. Baker*, 86 Fed. 753, the property was located at the southwest corner of Clark and 21st streets. The city vacated a portion of 21st street not extending, however, to the east line of the property claimed to be damaged, so that it did not corner with that property but was separated from it by a distance of about a rod. To the contention that the plaintiff could not recover because the vacated portion of the street was not adjacent to the damaged property, the court said:

''It is not essential to the right of action, under the decisions in Illinois, that the property alleged to have been injured should abut upon the vacated portion of the street. See *Rigney v. City of Chicago*, 102 Ill. 64; *City of Chicago v. Union Building Ass'n*, id. 379; *Littler v. City of Lincoln*, 106 Ill. 353; *City of East St. Louis v. O'Flynn*, 119 Ill. 200, 10 N. E. 395; *Chicago Anderson Pressed Brick Co. v. City of Chicago*, 138 Ill. 628, 28 N. E. 756; *Parker v. Catholic Bishop*, 146 Ill. 158, 34 N. E. 473; *City of Chicago v. Burcky*, 158 Ill. 103, 42 N. E. 178. While no part of Twenty-first street within a rod of the property of defendant in error was closed, yet egress and ingress which had existed to and from the west were cut off, leaving no immediate communication with the next cross street in that direction; and in that respect, at least, he suffered a special inconvenience in the use and enjoyment of his property, for which he should receive compensation.''

In *Park City Yacht Club v. Bridgeport*, 85 Conn. 366, 82 Atl. 1035, 39 L. R. A. (N. S.) 478, the property of the plaintiff was almost surrounded by water on several sides. The yacht club owned a clubhouse on the south side of a street known as Stratford avenue, a portion

of which not adjacent to the property of plaintiff was vacated. The court said that while the vacation of a part of a street did not ordinarily permit a recovery to an owner fronting on another part of the street, the rule was not universal, and that the facts there were so unusual as to make the exception clearly applicable, in that by the improvement which had been made the premises of plaintiff were put in a cul-de-sac. The court quoted with approval *Smith v. Boston,* 7 Cush. (Mass.) 254; *Illinois Cent. R. Co. v. Moriarity,* 135 Tenn. 446, 186 S. W. 1053, and *O'Brien v. Central Iron & Steel Co.,* 158 Ind. 218, 63 N. E. 302, 57 L. R. A. 508, 92 Am. St. Rep. 305, are to the same effect. The legal basis for the exception to the rule is well stated in the Indiana case:

"Under our law, when land is platted into lots, streets and alleys, and recorded, the act is accepted as a dedication by the owner to the public of a continuing right to travel such streets and alleys, and a conveyance of a lot abutting on such a street carries with it not only the fee in the soil to the center of the street, but also the right to use such street, as dedicated, in perpetuity, for the purposes of egress and ingress to the premises. And, so far as such street is necessary to a free and convenient way for travel to and from the lot, the right of the lot owner to use it for that purpose is appurtenant to his premises, is essential to its enjoyment, and is as inviolable as his right to the use of the property itself. In this respect the abutter's right is distinct, and altogether different, from the rights of the general public in the street. The abutter has a right, in common with the community, to use the street from end to end for the purpose of passage; but, in addition to this common right, he has an individual property right, appendant to his premises, in that part of the street which is necessary to

free and convenient egress and ingress to his property. That this latter right is private and personal and unshared by the community, and cannot be taken away, or materially interfered with, without the wrong-doer being answerable in damages, has been many times declared by this court.''

Defendant argues, however, that decisions like that of *Rigney v. City of Chicago,* are not applicable to the facts of the case at bar, and that the case of *Guttery v. Glenn,* 201 Ill. 275, and *C. Hacker Co. v. City of Joliet,* 196 Ill. App. 415, show this statement to be true. Because of the confidence with which this assertion is made, we have given careful consideration to these cases. In the *Guttery* case the controlling question was whether when the village of Middleton in Logan county was platted, creating a public square in the center of the town, it was the intention to bisect it by running through it a public street named Union avenue. The court carefully considered the evidence and held that it was not the intention to create any such public highway through the square. This was decisive of the case. The opinion of the court, however, went on to say that even if the street had been in fact created to run through the center of the square, the plaintiff, who sought an injunction against the village board to prevent an obstruction of the proposed highway, could not prevail because he did not show any ''particular injury to his property, distinct and separate from the injury which would be suffered by the public at large, in case the whole public square here in question were enclosed.'' The opinion further said that the obstruction placed by the board ''would be an obstruction occurring in a different and separate block from either of the blocks, where the property of appellee is located.'' Plaintiff could not, said the opinion, ''be injuriously affected by the closing of a street not adjacent to his property, nor directly affording access

thereto and egress therefrom.'' Plaintiff's damages, it was said, would be the same as would be sustained by all other persons in the city who might have to go that way. As authority, *City of East St. Louis v. O'Flynn,* 119 Ill. 200, was cited. In that case the plaintiff owned a house and lot fronting on an east and west street known as Third street. The city, by agreement with the railroad, vacated a part of this street but not in the block in which plaintiff's house was situated. There was apparently no proof of special circumstances from which special damage could be inferred. The court followed the rule laid down in *City of Chicago v. Union Building Ass'n,* 102 Ill. 379, and held that the vacation of the street merely obstructed a public and common right, and that for this there was no right of action. In *City of Chicago v. Union Building Ass'n,* 102 Ill. 379, the association, owner of the Chamber of Commerce building in Chicago, situated on the southwest corner of LaSalle and West Washington streets, filed a bill to enjoin the city council from vacating a plat of ground on LaSalle street, bounded on the south by VanBuren street, on the east by Pacific avenue, on the north by Jackson street, and on the west by Sherman street, in order to create a piece of ground to which the Board of Trade might be removed. This piece of ground was more than three blocks south of complainant's property, and there were several intersecting streets giving free access to all parts of the city. The court held that complainant was not entitled to an injunction; that complainant's property was three and one-half blocks distant from the part of LaSalle street to be vacated; that the streets adjacent would all remain in the same condition as to width, character of improvements, etc., as before, and that it had not been pointed out how complainant would be specially or peculiarly injured. The removal of the Board of Trade from its then location might diminish the number of

complainant's tenants, but complainant had no legal right to control its movement or location. The court said:

"In the American Law Register for October, 1880, one of the learned editors of that periodical, Mr. Edmund H. Bennett, in a note to *Fritz v. Hobson,* after a very elaborate review of the principal cases bearing upon the question now before us, comes, as we think very correctly, to the conclusion: 'First, for any act obstructing a public and common right, no private action will lie for damages of the same *kind* as those sustained by the general public, although in a much greater degree than any other person; second, an action will lie for peculiar damages of a different kind, though even in the smallest degree; third, the damages, if really peculiar, need not always be direct and immediate, like the loss of a horse, but may be as remote and consequential as in other cases of tort; fourth, the fact that many others sustain an injury of exactly like kind, is not a bar to individual actions of many cases of a public nuisance.''

The opinion went on to say that the case fell within the first of these classes; that the damages sustained were of the same kind as those sustained by the general public, differing, if at all, only in degree.

Defendant contends that a true statement of the rule of law applicable is:

"Where the vacated portion of a street is separated from the plaintiff's property by another public street over which, at a short distance, he may reach a public street extending in the same general direction as the vacated street, he is subjected only to the same inconvenience as the public, he suffers no damage different in kind (although it may be greater in degree) from that suffered by the public, and he is not entitled to recover.'' In support of this proposition defendant relies upon the general rule stated in Elliott on Roads

and Streets (4th ed.), vol. 2, secs. 1180 and 1181, where the author, after pointing out the distinction between the rights which vest in a landowner as one of the public and the right vested in such landowner as an adjoining proprietor, says:

"Owners of lands abutting upon neighboring streets, or upon other parts of the same street, at least when beyond the next cross street, are not, however, entitled to damages, notwithstanding the value of their lands may be lessened by its vacation or discontinuance."

A number of New York cases, *Coster v. Mayor of Albany,* 43 N. Y. 399; *People ex rel. Bushnell v. Newell,* 131 App. Div. (N. Y.) 555; *Kings County Fire Ins. Co. v. Stephens,* 101 N. Y. 411; In re Cox, 250 N. Y. Supp. 528, are cited together with *C. Hacker Co. v. City of Joliet,* 196 Ill. App. 415; and *Guttery v. Glenn,* 201 Ill. 275. As a matter of fact, the New York cases are all based upon the case of *Smith v. Boston,* 7 Cush. (Mass.) 254, where Chief Justice Shaw, delivering the opinion of the court, sustained the finding of the trial judge: "That the petitioner was not by law entitled to prove and recover any damages, because neither of his estates abutted on that part of Market street which was discontinued." After thus stating the general rule the opinion said:

"We do not mean to be understood as laying down a universal rule, that in no case can a man have damages for the discontinuance of a highway, unless his land bounds upon it; although as applicable to city streets, intersecting each other at short distances, it is an equitable rule. A man may have a farm, store, mill or wharf, not bounding on a street but communicating with it by a private way, so situated that he has no access to his property but by the public way. If this is discontinued, he must lose the benefit of his estate, or open a way at his own expense, which might be a direct and tangible damage, consequent upon the discontinu-

ance of the public way, and we are not prepared to say that he would not have a claim for damages under the statute.''

From the analysis heretofore presented of the Illinois cases, we think it is apparent in the first place that the courts of this State have not adhered with the same strictness (as have the courts of New York and some other States) to the general rule as there stated, but secondly, that the uncontradicted facts which here appear bring this case within the exception to the general rule. The plaintiff's property was situated in a unique position on the bank of the river, which made the usual access in different directions to the different parts of the city difficult. The effect of the closing of Orleans street was to diminish in a most serious way the accessibility of this property to those from other parts of the city who might wish to reach it, as well as making other parts of the city far less accessible to those using the property. The ordinances vacating these portions of these streets were passed in conformity with a contract between the city and the Northwestern Railway Company. The city in making its deal with the railway company for the closing of streets was bound to take this situation into consideration. The damage resulting to plaintiff's property was special in its nature and altogether unlike that sustained by it in common with the public generally. In so far as the damage which plaintiff sustained was not shared by the general public, he was entitled to compensation. The obstruction of streets leading to property located as is this results in damage of a different kind than the obstruction of streets leading to property surrounded by land on all sides and where there is easy accessibility by other streets. As plaintiff points out, one of the principal values of land located along a navigable water is its combined accessibility by both water and land, and if that value is destroyed the owner sustains

damage which is different in kind from that which the owner sustains in common with the community of which he is a part. That the amount of damage sustained is difficult to ascertain with any degree of exactness is no reason for denying recovery altogether. Here the task was committed to a jury, presumably intelligent, and the verdict of the jury which viewed the premises has been approved by the trial judge who heard the evidence. It is not contended that the damages allowed are in fact excessive.

Complaint is made that evidence was admitted tending to show that subsequent to the vacation of this section of Orleans street by the city, a railroad company which was not a party to the suit encroached upon Carroll avenue in such a way as to reduce the usable width of part of that avenue as means of access to the plaintiff's property. If it might be granted that it was error to admit this evidence, it would seem to have a bearing only on the question of damages rather than upon the right of recovery. Defendant does not argue that the damages allowed are excessive.

We hold there is no reversible error in the record, and the judgment of the trial court is therefore affirmed.

*Affirmed.*

O'CONNOR and McSURELY, JJ., concur.