Calumet Federal Savings and Loan Association of Chicago and Fred E. Hummel, Successor Trustee, Appellees, v. City of Chicago et al., Appellants.

Gen. No. 41,087.

Opinion filed October 1, 1940. Rehearing denied October 15, 1940.

BARNET HODES, CORPORATION COUNSEL, for certain appellants.

THOMAS J. COURTNEY, State's Attorney, for certain other appellants; WALTER V. SCHAEFER, ROBERT J. NOLAN and DAVID L. LEEDS, Assistant Corporation Counsel, and JOHN J. GRIFFIN, of Chicago, of counsel.

PEDEN, MELANIPHY, RYAN & ANDREAS, of Chicago, for certain appellee; JOHN C. MELANIPHY and GERALD RYAN, both of Chicago, of counsel.

ARTHUR J. HUGHES, of Chicago, for certain other appellee; PHILIP A. GIBBONS, of Chicago, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff filed a complaint seeking a mandatory injunction to compel the removal of certain obstructive curbings on Torrence avenue in the vicinity of 95th and 97th streets in Chicago and for damages; evidence was presented before a master in chancery who reported favorably for plaintiff; the trial court decreed accordingly and issued its writ commanding the restoration of Torrence avenue to its condition prior to the construction of the curbings and retained jurisdiction for the ascertainment of damages to plaintiff's property. Defendants appeal.

Plaintiff's property is located at the southwest corner of Torrence and 95th street, improved with a gasoline filling station and a two-story building, the first floor of which is used for a tavern and the second floor for residential purposes. Fred Hummel, suc-

cessor trustee in bankruptcy, filed an intervening peti-
tion alleging that he had been in possession of vacant
property with a sideage of 37 feet on 95th street and a
frontage of 600 feet on the east side of Torrence avenue,
extending south from 95th street; he adopted the allega-
tions of the complaint and asked for the same relief.

The complaint alleged that the streets involved had
been dedicated and laid out as streets in the city of
Chicago for more than 15 years prior to the occurrences
set forth in the complaint; that they are paved and side-
walks laid, the cost of which was paid by the abutting
property owners; that Torrence avenue at 95th street
and at 97th street was recently closed by defendants by
the construction of barrier curbs and that plaintiff's
access to Torrence avenue and to 95th street was unlaw-
fully interfered with.

Defendants filed a motion to dismiss the complaint
asserting that the damages alleged were consequential
damages which were capable of ascertainment in an
action at law and that the relief sought was beyond the
equitable jurisdiction of the court. The motion to
dismiss was overruled and defendants answered, setting
forth the physical conditions existing in the vicinity and
that the action taken by defendants was taken solely in
the interest of public safety.

95th street is 100 feet in width and runs from the
western to the eastern city limits; Torrence avenue is
80 feet in width, running from the south city limits
northward to 95th street; immediately east of Torrence
at this point is an elevated railroad embankment which,
going north, crosses over 95th street at an angle by a
viaduct with center and sidewalk columns. Torrence
avenue does not extend north of 95th street; about 200
feet west of Torrence and running north from 95th
street is Colfax avenue, which, before the changes in
question were made, did not run south of 95th street;
a short distance north of 95th street Colfax passes

underneath a railroad right of way by means of an underpass divided by center pillars.

Prior to the changes referred to, northbound automobile traffic proceeded north in Torrence to 95th street, then made a left turn in 95th street, proceeded west in 95th street about 200 feet and turned right and went north in Colfax avenue. This necessitated the crossing of both the east and westbound traffic on 95th street. Also, automobile traffic going south in Colfax would make a left turn in 95th street and a right turn in Torrence, crossing both the west and eastbound traffic in 95th street. As one of the witnesses testified, ''A car coming north on Torrence avenue to 95th street would stop because of a stop street. To proceed north the car would have to make a left turn and weave through traffic in a westerly direction to the north side of 95th street and then make a right turn onto Colfax avenue. This is a dangerous procedure under any condition whether traffic is light or traffic is heavy. The (railroad) underpass at 95th street and Torrence avenue effected the hazard of weaving, because a car (automobile) coming to 95th street and Torrence avenue had vision obscured to the east by the center columns and by sidewalk columns of the 95th street underpass and it is difficult to see cars coming from the east. . . .''

Officials in charge of defendants' streets were of the opinion that this, physically, was a dangerous situation for traffic and developed a plan to avoid it, which was carried out and is the subject of this controversy. Colfax avenue was extended south of 95th street and as it approached 97th street it was converged into Torrence with an ''easy curve'' towards the east at a point approximately 50 feet north of 97th street. Concrete curbs about 7 inches high were constructed across Torrence north of the juncture with Colfax and also across Torrence at the south line of 95th street. Near these respective curbs the paved part of Torrence was wid-

ened and paved in a half circle so as to facilitate the turning of traffic in Torrence at these respective points. In order to provide access to that portion of Torrence lying between the north and south curbs, 96th street was opened between Torrence and the newly constructed Colfax avenue and paved to a width of 40 feet. Before and after these changes were made access to plaintiff's filling station was and is by a driveway from 95th street and also from Torrence avenue.

The trial court in its decree approved of these changes saying, ''The elimination of the Torrence Avenue crossing would improve traffic conditions, and also decrease traffic hazards. . . . '' The record abundantly justified this conclusion. The necessity, when coming from the south, of making a left turn out of Torrence across 95th street, where the westbound traffic on 95th east of Torrence is concealed by the pillars and posts of the railroad underpass, until it is a few feet of the east line of Torrence and the necessity, when desiring to proceed north in Colfax, of weaving across traffic in 95th street to reach a position near the right hand curb in order to make a right turn north in Colfax, presents a very hazardous situation.

*Illinois Malleable Iron Co. v. Commissioners of Lincoln Park,* 263 Ill. 446, involved an ordinance which provided that wagons carrying goods to or from plaintiff's premises could only use the parkway drive between certain streets; plaintiff contended that as an abutting property owner it had a special right in the parkway as a means of access to its property. It was held that the ordinance was valid under the legislative power over public streets to grant authority to limit their use for any purpose not incompatible with the objects for which they were established and to the argument that the ordinance was invalid as requiring the plaintiff to take a circuitous route to reach its premises, the court held that this inconvenience did not

invalidate the ordinance. The opinion cites many cases supporting the views expressed. Cases involving similar facts in which it is held that the rights of an abutter are subject to the rights of the State to regulate and control the public highways for the benefit of the travelling public, even though that abutter may be inconvenienced by such regulation, are *Wilbur v. City of Newton,* 301 Mass. 97, 16 N. E. (2d) 86; *Simpson v. City of Los Angeles,* 4 Cal. (2d) 60; *King v. Stark County,* 66 N. D. 467; *Jones Beach Boulevard Estate v. Moses,* 268 N. Y. 362.

Plaintiffs alleged in the instant case that these changes were the result of a conspiracy among defendants to violate and evade the law. There was no evidence to support this. On the contrary, the trial court in its decree found not only that this work would improve traffic conditions by decreasing traffic hazards, but "the municipal authorities would be wholly within their discretion to put such plan into effect," and that "the acts done by the defendants were in good faith and designed to decrease or eliminate traffic hazards." No objections or exceptions were made to this finding, either in the trial court or here. Therefore such findings are conclusive upon the plaintiff. *Moore v. Machinery Sales Co.,* 297 Ill. 564, 567; *Decatur Coal Co. v. Clokey,* 332 Ill. 253. Moreover, these findings are amply supported by the evidence.

The trial court was of the opinion that the construction of the curbs on Torrence "necessitated the vacating of a portion of Torrence avenue, which can only be done as provided by statute." We are of the opinion this conclusion was erroneous. The vacation of a public street involves its complete abandonment for street purposes and the adoption of an ordinance to this end. Ill. Rev. Stat. 1939, ch. 145, § 1 [Jones Ill. Stats. Ann. 21.685]. The vacation of a street terminates the rights of the public in the land which formerly consti-

tuted the street and it is automatically transferred to the owners of the abutting property. Ill. Rev. Stat. 1939, ch. 145, § 2 [Jones Ill. Stats. Ann. 21.686].

Defendants concede that no such ordinance was adopted and assert as a fact that there has been no vacation of Torrence avenue. Photographs in the record show vehicles on Torrence avenue between 95th and 97th streets. The opening and improving of 96th street between Colfax and Torrence was solely for the purpose of giving access to Torrence avenue between these streets.

Plaintiff has access to its property, both from Torrence and 95th street. The only effect of the changes made is that to reach that portion of plaintiff's property fronting on Torrence avenue it is necessary to use a more circuitous route than that heretofore available. A traffic engineer testifying on behalf of plaintiff said that a vehicle starting from the intersection of 95th street and Torrence avenue and going south on Torrence to 96th street and then westward to Colfax and on Colfax north to 95th and on 95th back to the starting point on Torrence, traveling at 20 miles an hour, would take 75 seconds to go that distance, and at 10 miles an hour would take 150 seconds. Plaintiff contends that the inconvenience of this additional time destroys ingress and egress to its property. Manifestly this cannot be true.

The trial court, based upon the assumption that Torrence avenue had been in fact vacated, although not legally, drew the erroneous conclusion that plaintiff could not maintain an action at law for damages to its property until a valid vacation ordinance had been passed. Plaintiff argues that by failing to pass a vacating ordinance the hands of plaintiff are tied. This is an error. The right of plaintiff to maintain an action for any damage to its property by a public improvement rests upon the provisions of section 13, article 2 of our

State constitution, which says that "Private property shall not be . . . damaged for public use without just compensation." *Davis v. City of Chicago,* 290 Ill. App. 244. Petition for leave to appeal to Supreme Court denied.

In *Weage v. Chicago & W. I. R. Co.,* 227 Ill. 421, the plaintiff sought to enjoin the elevation of railroad tracks in Wallace street and other streets and alleys in Chicago; it was alleged that the ordinance permitting this granted to the railroad the exclusive use of Wallace street for a number of blocks except the west 20 feet, and portions of certain other streets; that this amounted to a vacation of the streets; that in the event the court should be of opinion that the railroad should pay plaintiff damages, a commissioner or some other body be selected by the court to hear and determine such claims; the reviewing court held that the ordinance did not vacate the streets; that the averments of the complaint did not make a case that would justify the interposition of a court of equity and that if the parties have any remedy "a court of law would afford them complete and adequate relief."

Manifestly, in the instant case there is merely a regulation in the use of Torrence avenue but no vacation. The obstructing curbs prevent through traffic on Torrence and divert this to the safer highway on Colfax avenue but do not prevent the use of Torrence avenue as a street.

Suits for damages to property resulting in changes in the grade of public streets are common and are based upon the constitution, above cited. The right of plaintiff in the instant case to recover damages in an action at law is no different than the rights asserted by plaintiffs in the many cases involving change of grade in the streets. The changes under consideration involve no physical taking of plaintiff's property and equity will not assume jurisdiction to interfere with the construc-

tion of a public improvement. By diverting the through traffic from Torrence to Colfax the volume of traffic on Torrence will be substantially diminished. We find no cases holding that an abutting property owner has any vested right in the volume of traffic passing its property. In *Hacker Co. v. City of Joliet,* 196 Ill. App. 415, it has been held that no such right exists. This seems to be conceded in plaintiff's brief.

*Childs & Co. v. City of Chicago,* 279 Ill. 623, involved the question as to whether the city could be enjoined from proceeding with the construction of the Monroe street bridge in Chicago because the complainant would suffer consequential damages from such improvement; it was conceded, as here, that no part of plaintiff's property would be taken. The court refused to enjoin the work, quoting from *County of Mercer v. Wolff,* 237 Ill. 74, 76, "For such actual damages, though consequential only, as may be sustained by an owner of abutting land through the taking of adjoining premises for a public use a remedy is given, and the owner may have his compensation ascertained by a jury, as required by the constitution in a common law action. But when no part of the land of an abutting owner is taken the constitution does not require the ascertainment and payment of his consequential damages before entry can be made upon adjoining property. Damages resulting to an abutting proprietor, no part of whose land is physically taken, are not within the contemplation of the Eminent Domain act, but he is remitted to his action at law for his damages." The opinion said this has long been the settled law of this State, citing many cases. See also *South Park Commissioners v. Montgomery Ward & Co.,* 248 Ill. 299, 310, 311.

Plaintiff cites cases tending to support the proposition that having been damaged it is entitled to compensation. We understand defendants concede that plaintiff may bring an action at law to this end. *Smith*

*v. McDowell,* 148 Ill. 51, and *Pew v. City of Litchfield,* 115 Ill. App. 13, are cited by plaintiff. These cases involve the validity of ordinances giving a portion of a street to a private person for his sole use. It was held that no such power existed and the matter was properly litigated in a chancery court. No similar conditions are in the instant case.

Whatever may be the rule in New York and other States (see *Story v. New York Elevated R. Co.,* 90 N. Y. 122, where defendants were restrained from constructing and operating their elevated railroad on a street in New York City opposite plaintiff's premises), the Supreme Court of this State has not followed these cases. In *Doane v. Lake Street Elevated R. Co.,* 165 Ill. 510, plaintiff sought to enjoin the construction of defendant's elevated railroad on Lake street. The court held that plaintiff's injury was "a depreciation of the property, which is capable of being estimated in money and recoverable in an action at law, therefore a court of equity will not interfere by injunction."

The above considerations lead us to the conclusion that the construction of the curbs on Torrence avenue at 95th and 97th streets was a reasonable exercise of the police power in the interest of public safety; that Torrence avenue was not vacated, either in law or in fact; that under the circumstances a court of equity will not assume jurisdiction to interfere with the construction of public improvements.

Other points are suggested in the briefs which we do not discuss, as what we have said disposes of the case.

We hold that the order appealed from is erroneous and it is reversed and the cause is remanded with directions to dismiss the complaint.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and MATCHETT, J., concur.