(No. 4596-

NICOLA BUCCIARELLI, ADMINISTRATOR DE BONIS NON WITH WILL ANNEXED OF THE ESTATE OF MARIO (MARIANO) BUCCIARELLI, DECEASED, AND NICOLA BUCCIARELLI, EXECUTOR OF THE LAST WILL OF MARIA BUCCIARELLI, DECEASED, Claimants, VS. STATE OF ILLINOIS, Respondent.

*Opinion filed May 13, 1958.*

DALE G. NICHOLSON, Attorney for Claimant.

LATHAM CASTLE, Attorney General; MARION G. TIERNAN, Assistant Attorney General, for Respondent.

WHAM, J.

Claimants seek recovery of $7,500.00 for alleged damages to certain real estate located in Joliet, Illinois, the description of which is as follows:

Lot One (1), Two (2), Three (3), and Four (4) in Block One (1) in Faust and Hammond's Subdivision of the East half and the West half of Sub-Lot One (1) of Lot Seven (7), and Sub-Lot Two (2) of Lot Seven (7), and part of Sub-Lot Five (5) of Lot Six (6) in Stevens and Paige's Subdivision of Lots Two (2), Three (3), Four (4), Five (5), Six (6), and Seven (7) of the Estate of Robert Stevens Subdivision of part of the Southwest quarter of Section Eleven (11), and part of the Southeast quarter of Section Ten (10) in Township thirty-five (35), North, Range Ten (10) East of the third Principal Meridian, situated in Will County, Illinois.

The complaint is based upon Section 13, Article 2 of the Constitution of Illinois, wherein it provides: "Private property shall not be taken or damaged for public use without just compensation".

Claimants contend that the State of Illinois damaged the above described property, which fronted on East Cass Street in the City of Joliet, Illinois, when it widened and extended the Cass Street viaduct, thus narrowing the lower level of Cass Street from a width of approximately 12 feet to a width of approximately 7 feet.

Respondent, in its answer, denies that the widening of the viaduct caused any damage to claimants' property, and, as an affirmative defense, pleads a former award rendered by this Court to prior owners of the property, such award being reported in 5 C.C.R. 409 in the case of *Peterson, Et Al,* vs. *State of Illinois.* Respondent contends that the prior award is a bar to a recovery in the instant action on the theory that the prior owners of the property received full compensation for all present

and future damages by the award rendered in the Peterson case, which was an action based upon the original construction of the Cass Street viaduct in 1927. The original construction of the viaduct in Cass Street occupied all of the 64 foot thoroughfare except 12 feet.

Claimant in his reply admits that the same property is involved in both actions, and admits that claimant is a party in privity with claimants in the Peterson case. Claimant denies, however, that the Peterson case award bars the instant action, wherein claimant seeks recovery for alleged damages sustained by widening and extending the viaduct an additional 5 feet beyond its original width.

The undisputed facts from the record of the Peterson case, of which we take judicial notice, disclose that the State of Illinois constructed the Cass Street viaduct in the year 1925. It was built on the Lincoln Highway on Bond Issue Route No. 22 at a point where the highway is intersected by the right-of-way of the Elgin, Joliet and Eastern Railway Company. The viaduct was built over the railroad tracks and right-of-way, and was approximately 1300 feet long, 50 feet in width and 40 feet in height.

The condition resulting from the original construction of the viaduct, as reflected from the record of the Peterson case, is as set forth in the statement of facts in the briefs filed by claimants, which were acknowledged by the state as correctly portraying the facts. These were the conditions upon which the Court in the Peterson case made the awards.

Quoting from the statement of facts there before the Court, the facts were as follows:

"The viaduct is a structure of enduring use and beauty. It is built of concrete and brick. It is 1300 feet long, 50.6 feet wide. It occupies the larger part of the roadway for five blocks. It is 39.54 feet high. (R. 25-35) The roadway on top is paved and furnished with sidewalks. Travel over it is smooth, safe and uninterrupted, but it is had at a heavy cost to the few, who have suffered loss for the benefit of the many.

It practically fills the street, but outside of each wall the state has left a lane seven feet wide for vehicles and five feet for sidewalks. As it is impossible to handle vehicles successfuly within the narrow limits of seven feet, the walks have been crushed by trucks and motor vehicles driven over them, and the balance of the road is cut to pieces. Access to the property fronting the wall is limited to these lanes. Foot passengers, including children, share them with such delivery wagons, horses and motor vehicles as are compelled to use them in reaching adjacent stores and dwellings. In the summer they are mudholes. In the winter, they are deeply drifted in snow. It is dark in the shadow of the walls. A part of the structure near the tracks is supported on columns with an open space underneath. Being beyond the jurisdiction of the city police, the openings underneath are infested with the disorderly and dangerous persons, who usually seek shelter in such surroundings.

Before the viaduct was built, this property fronted Cass Street on the grade. Cass Street was the main avenue of travel into Joliet from the east. It had become the location of the Lincoln Highway. Because of its importance and convenience, it was selected as the location of Bond Issue Route No. 22. It was the principal east and west business street of Joliet, constantly growing in importance. Inside the city limits it constituted a part of the business district. In the neighborhood of the viaduct it was partly a business and partly a residential neighborhood; in that familiar condition of transition when business is supplanting residential use. Before the viaduct was built, real estate values were good. They were advancing rapidly. Stores, garages, service stations, shops and offices were already built and occupied by businesses of some years establishment. The dwellings were of moderate size, mostly frame, owned and occupied by the better class of mechanics and artisans, and, in several instances, operated as rooming houses by widows, who supported themselves in that way for the present, and hoped to provide for future illness, poverty and old age by the growing value of their homes. Before the viaduct was built, business locations were worth an average price of $75 a front foot and residence locations $50 a front foot for the real estate without reference to the added value of improvements. It is obvious that these values have, and must have almost entirely disappeared."

It is noted at page 410 of the opinion in the Peterson case that claimants alleged, "that said viaduct was built in such a manner as to occupy all of the street or roadway, and raised the roadbed thirty feet and upward fronting the properties of claimants, depriving claimants of light,

air and practical access to the public thoroughfare of said claimants' property fronts''.

It is apparent from the decision of the Court in the Peterson case, and from the record there before the Court, that the awards made to the then owners of the same property here involved were based upon the occupancy of Cass Street by the viaduct in such a manner and to such an extent that only a roadway sufficient to accommodate one way vehicular traffic remained.

It is also apparent therefrom that the entire character of the neighborhood was altered, and that light and air rights were adversely affected.

Keeping in mind the basis upon which this former decision of the Court was made, it is for us to determine whether or not the present owners of the properties have shown that the properties have been appreciably damaged beyond that established in the Peterson case by reason of the widening of the viaduct a distance of five feet beyond the original construction.

The evidence offered in the instant case discloses that the state determined it was necessary to reconstruct the viaduct, since it had become hazardous to the traveling public. In December, 1951, the lower level of Cass Street was blocked off, because of the hazardous condition of the retaining walls of the viaduct.

During 1952 and 1953, the reconstruction, among other things, consisted of widening the roadway of the viaduct, which necessitated widening the piers on either side of the viaduct approximately 4 feet 10 inches. Consequently, the lower level of Cass Street was narrowed approximately 5 feet. There now remains a 7 foot roadway in front of claimants' properties, which is, according to the evidence, including photographic exhibits,

sufficient to allow the passage of an automobile without difficulty. Prior to the reconstruction, the then 12 foot roadway was only sufficient for one automobile at a time to proceed along the lower level of Cass Street.

The distance between the piers supporting the viaduct is still sufficient to permit an automobile to be driven between them, so that other automobiles may pass along Cass Street, as they could prior to the widening of the viaduct.

The evidence further disclosed that the width after the widening operations was sufficient to allow the passage of a state truck equipped with a cinder spreader projecting approximately 2 feet beyond the hub of the truck wheels, although some difficulty was encountered.

Claimants' property abutting Cass Street consists of the following:

A two story frame structure, consisting of two 4 room apartments and one 3 room apartment, located at 1000 East Cass Street. This property also abuts on Stevens Avenue, a public street, 66 feet in width.

A frame 4 room house, located at 1002 East Cass Street.

A brick store building, approximately 15 feet by 15 feet, with a 6 room apartment in the rear, located at 1004 East Cass Street. This property has access to Faust Avenue, a public street, 23 feet in width, by way of other property owned by claimants.

A combination brick and frame building, used as a tavern, approximately 43 feet by 43 feet, with a 4 room apartment in the rear, located at 1006 East Cass Street. This property also abuts on Faust Avenue.

A frame structure, consisting of one 5 room and one 4 room apartment, located at 1008 East Cass Street, which also abuts on Faust Avenue.

A 4 room dwelling, without bath, located at 1010 East Cass Street. It is bounded on the east by the Elgin, Joliet & Eastern Railroad Company right-of-way. This property also has access to Faust Avenue by way of other property owned by claimants.

Nicola Bucciarelli, the present claimant, testified that he managed the entire group of properties. He stated that the 4 room house, located at 1010 East Cass Street was vacant, but acknowledged, on cross-examination, that he did not lose the tenants because of the reconstruction. This was admittedly poor property.

The only other specific properties referred to in his testimony were the grocery store building, located at 1004 East Cass Street, and the tavern, located at 1006 East Cass Street.

With respect to the grocery store, he stated that his father had ceased operating it in November of 1951, and that it had been vacant since that time. This was before any reconstruction work was done, and was at the time East Cass Street was blocked by reason of the hazardous condition of the retaining wall, a portion of which had fallen. Claimant, in his brief and argument, acknowledges that no claim is being made for any loss sustained by reason of the blocking of Cass Street prior to and during the reconstruction work.

As to the tavern building, the witness stated that, since July of 1953, it has been vacant, but that prior thereto he had managed a tavern located therein for several years. He testified to gross receipts of the tavern business for a number of years, being as follows:

| 1947 | $17,362.45 | 1951 | $16,508.45 |
|------|-----------|------|-----------|
| 1948 | $17,651.00 | 1952 | $13,798.00 |
| 1949 | $18,695.70 | 1953 | (for 6 months) |
| 1950 | $17,285.75 | | $ 4,835.25 |

He contended that the tavern business was ruined by reason of the narrowing of East Cass Street, and that he could not persuade his customers to use the other route available along Faust Avenue. He acknowledged that there was sufficient parking facilities along Faust Avenue, and a portion of claimants' property used for that purpose. The route along Faust Avenue to the tavern was no more than a block or two longer than the route along East Cass Street.

We are not persuaded by this evidence that either the grocery business or the tavern business was affected by the narrowing of East Cass Street. The grocery business was non-existent at the time of the reconstruction. It is significant to note that, even during the period of the reconstruction when East Cass Street was completely closed, the gross receipts of the tavern for the year 1952 were well within the range of the gross receipts of the prior years, so that the difference could well have resulted from a general decline in the tavern business completely unrelated to the reconstruction. Apparently, from the gross receipts of 1952, a good number of customers found their way to the tavern along the Faust Avenue route, since East Cass Street was completely blocked at the time. It is also noted that the business was discontinued in July of 1953, while the reconstruction was still in progress.

What would have been the effect upon the business after East Cass Street was once again open for travel is not shown by claimant.

Moreover, there was practical access to these properties by the way of Faust Street. In the case of *Calumet*

*Federal Savings and Loan Ass'n.* vs. *City of Chicago,* 306 Ill. App. 524, involving a similar situation, the court stated at page 530:

"The only effect of the changes made is that to reach that portion of plaintiff's property fronting on Torrence Avenue it is necessary to use a more circuitous route than that heretofore available. . . . Plaintiff contends that the inconvenience of this additional time destroys ingress and egress to its property. Manifestly, this can not be true."

So in this case, even assuming for sake of argument that the tavern and grocery store customers had to use Faust Avenue to reach the tavern and store, it is not such an additional distance to travel that would constitute a material effect upon the access to these premises.

Actually, however, East Cass Street for all practical purposes still affords the same access to these properties and the others, as it had prior to the reconstruction. It could only handle one way traffic before the widening of the viaduct. It can still handle one way traffic after the widening of the viaduct. The slight increase in the degree of care to be used in passing through a 7 foot rather than a 12 foot roadway is, in our judgment, incapable of measurement in terms of dollars, and is, therefore, too speculative an item to consider.

When we compare the present condition with the condition before the Court in the Peterson case, we can not find any significant worsening by reason of the reconstruction of the viaduct. Neither the means of access nor the light and air rights of the properties have been substantially affected since the original condition was before this Court and made the subject of a monetary award to the then owners of the premises.

In arriving at this conclusion, we have not overlooked the testimony of the two real estate agents offered by

claimant as to their opinions of the fair cash market value prior and subsequent to the reconstruction.

Before this type of testimony would be material to the issues, claimant must first bear the burden of proving that it was the reconstruction, which caused the properties to become depreciated in value, and not some other cause. This he failed to do to our satisfaction, and, therefore, the opinions of these witnesses as to value before and after the reconstruction are not material.

Also, we note that both witnesses based their opinions to a large extent on a capitalization basis from income produced by the properties. This method, under the evidence in this case, seems to us to be a speculative basis upon which to ground an opinion.

This need not be considered further, however, in view of our conclusion as to the other elements of the case, and we, therefore, deny this claim for the reasons hereinabove set forth.